137 So.2d 456 (1962)
Ralph W. TURNER, Plaintiff-Appellee,
v.
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Defendant-Appellant.
No. 9655.
Court of Appeal of Louisiana, Second Circuit.
January 31, 1962.
*457 Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellant.
Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for appellee.
Before HARDY, AYRES and BOLIN, JJ.
AYRES, Judge.
This is an action in tort wherein plaintiff seeks to recover damages for personal injuries and to property sustained in an accident of June 2, 1958. Involved were plaintiff's pickup truck, driven by him, and an Allis-Chalmers tractor of the Department of Highways of the State of Louisiana, operated by one of its employees.
After trial, there was judgment in plaintiff's favor for $45,000, less a credit of $10,300. From this judgment, the defendant prosecutes this appeal.
The question of liability was determined adversely to defendant in the case of Turner v. Insurance Co. of State of Pennsylvania, La.App.2d Cir., 1960, 117 So.2d 657. The primary issue, therefore, relates to a question of quantum of damages.
However, the defendant has filed, in this court, an exception of no cause of action predicated upon the proposition (1) that plaintiff's claims arose from acts of negligence of an employee of defendant who was, at the time, working upon the surface of a highway being maintained by the State of Louisiana, and (2) that the State is exempt from liability for such acts when committed by "* * * persons or vehicles actually engaged in work upon the surface of the highway." LSA-R.S. 32:246. The court may, but is not required to, give consideration to this exception, LSA-C.C.P. Art. 2163; Gregory v. Hardwick, 218 La. 346, 49 So.2d 423; Succession of Douglass, 225 La. 65, 72 So.2d 262; but the propriety of our doing so is questionable. Inasmuch, however, as the exception is, in our opinion, clearly without merit, we may briefly assign reasons therefor.
The exemption from compliance with the provisions of the statute obviously relates to an exemption from criminal liability for noncompliance with the prescribed regulations such as pertain to the operation of or size of motor vehicles and the obstruction of highways, et cetera, and not to civil liability for the negligence of defendant's employees. Liability in the instant case is predicated upon LSA-C.C. Art. 2315. The coverage is broad. No provision is made therein for the exemption of liability for the acts of others, for whom one is responsible, which cause damage to another. Nor do the facts established to have existed in this case support defendant's position. The employee of defendant was engaged in work on a roadside park and not upon the surface of a highway. The exception is, therefore, without merit and is overruled.
The principal injuries sustained by plaintiff were to his cervical region and lumbosacral area of the spine. The latter necessitated surgical removal of the nucleus pulposus at the L4-L5 intervertebral space. This operative procedure was accomplished in June of 1958. One year later, at the first trial of this cause, plaintiff was still suffering exquisite pain, was still disabled from the performance of manual labor of *458 any reasonable character, and remained under medical care and treatment.
Plaintiff did not realize, immediately following the accident, the extent of the injuries sustained by him. However, due to developments later in the day, he consulted Dr. Paul D. Abramson at the North Louisiana Sanitarium. Receiving no relief from medication, including a muscle relaxant, he returned to the hospital and was placed in pelvic traction, and, later, cervical traction. Pain persisting, Dr. Abramson recommended that an othopedic surgeon be called for consultation. Dr. Ray E. King responded to this call, made an examination of plaintiff, and diagnosed the condition as a ruptured disc, placing pressure on the first sacral nerve. The condition, not having responded to treatment, an operation was performed June 21, 1958. During the performance of the operation, the fifth lumbar nerve was found to be imbedded in, and had to be dissected from, the pulposus, resulting in considerable trauma to the nerve itself. A spinal fusion ordinarily resorted to was not undertaken during the operation because of conditions encountered which, in the doctor's opinion, would not warrant nor justify such procedure. The conditions encountered were described as extensive destruction of the soft tissue and bone in the surgical procedure which made a spinal fusion impossible or impractical. The purpose of such procedure is to immobilize the lower back, limit mobility, but strengthen the spinal column and permit the patient to use his back for limited purposes, substantially free of pain.
In regard to the aforesaid condition, Dr. King testified at the first trial, that plaintiff would have little use of his lower back due to its weakened condition and the presence of pain. Though medical treatment was continued, Dr. King expressed the opinion that plaintiff had probably reached maximum improvement in his injuries to the lumbar and cervical areas of his spine. Objective symptoms continued to persist and manifest themselves, such as muscle spasms, limitation of motion, reflex changes, and sensation responses. Back braces afforded plaintiff little relief from pain. Severe headaches, developed after surgery, continued to persist.
Three years after the accident, on the occasion of the trial in July of 1961, there had been no substantial improvement in plaintiff's condition; his condition had, in all probability, worsened. Pain and disability continued, and, from the continued use of medicines, a certain degree of immunity to their effects had developed.
Since the first trial, plaintiff had been examined and treated by Drs. King and John W. Jackson, orthopedists at the Veterans Administration facility; and Philip Bonn, a neurosurgeon.
Dr. King, the operating surgeon and the principal treating physician, was in a most favorable position to evaluate plaintiff's condition. According to Dr. King, there had been either a recurrence of the herniated disc, or a development of scar tissue or adhesions in the operative area involving the nerves. In the event of a recurrence of the herniated disc, there was some prospect of relief from another operation, but no permanent relief could be expected if the condition involved scar tissue or adhesions, due to their inevitable recurrence if removed through surgery.
On the occasion of the second trial, Dr. King's findings were marked limitation of motion in the cervical and lumbar spinal areas of plaintiff's back, muscle spasms in neck and back, limpness in the right leg, pain or palpation or pressure at base of occiput and erector spinae muscle areas of the lumbar spine, absence of right ankle jerk, and weakness of dorsiflexion of the right foot. Plaintiff continued to suffer severe headaches and experienced pain and numbness in the right leg. Drs. Jackson and Bonn were in substantial accord with Dr. King's findings and conclusions.
From all the testimony, it can only be concluded that plaintiff had reached a period *459 of maximum recovery; no further improvement was expected and plaintiff was totally and permanently disabled for any work requiring substantial manual exertion. Little, if any, hope remained for a cessation of pain in the cervical and lumbar spine. The consensus was that all conservative treatment had been exhausted.
Plaintiff was, at the time of the accident, 44 years of agestrong and robust in health. As the mortality tables reflect, he had a life expectancy of 31.4 years. He was the owner of a cattle ranch and farm, the principal work on which was done by him personally. In this enterprise, he had achieved notable success. From the evidence, it can be concluded that he had a possible minimum income of $4,000 per year from his labor and from the operation of his farm and ranch. From a robust, vigorous individual, endowed with physical ability and ambition, plaintiff has been reduced, through accidental injuries, to a state of, at best, semi-invalidism. This condition, in all probability, is permanent and plaintiff will hereafter, during the remainder of his life, suffer anguish and pain, and experience a state of dependency.
Considering the nature and extent of plaintiff's injuries, and their total and permanent effect, the physical pain suffered and to be hereinafter endured, in all probability, for the remainder of his life, the medical expenses incurred and to be incurred, and the loss of earnings, or loss of his earning capacity, the award made by the trial court cannot, in our opinion, be said to be excessive. We reach this conclusion notwithstanding the citation of authorities wherein much lesser awards have been approved in matters involving herniated discs and other identical injuries to the back. Our review of those authorities leads us to the conclusion that they are readily distinguishable from and incomparable to the instant case, particularly as to the extent, duration, and permanent effect of the injuries sustained by plaintiff and as to the prolonged period of intense pain and suffering which have, for all practical purposes, reduced plaintiff to an invalid, probably for the remainder of his life.
The judgment appealed is, accordingly, affirmed.
The defendant-appellant is assessed with such cost as is assessable against it.
Affirmed.