LOTTINGER, Judge.
This is a suit for wrongful death resulting from an automobile-truck collision *485 filed by Mr. and Mrs. Earl Keaton against Lee E. Jones, the driver of the truck, his employer, Freiler Industries, Inc., and its insurer, Transit Casualty Company of St. Louis. The defendants pled the negligence of Mrs. Mattie Brown, the owner of the vehicle in which the plaintiffs’ children were guest passengers and the driver of the said vehicle. The Keatons subsequently compromised their claim against Mattie W. Brown. The Lower Court awarded a judgment in favor of petitioners against Freiler Industries, Inc. and Transit Casualty Company, in solido, in the sum of $35,000. Said defendants have appealed.
The tragic accident occurred on July 17, 1968, near Albany, Louisiana. Two of petitioners’ children lost their lives as a result of the accident, namely Kyle and Kay Keaton who were riding together with their grandfather, Mr. Brown, as guest passengers in the automobile driven by their grandmother, Mrs. Mattie Brown.
The Brown vehicle was traveling South on Louisiana Highway 43. At about the same time and place a large tractor-trailer unit owned by Freiler Industries and loaded with 40 foot creosote pilings was proceeding West on Louisiana Highway 42 near the T-intersection with Highway 43. As Mrs. Brown approached the stop sign at the intersection, she slowed to a stop and then proceeded across Louisiana Highway 42 onto its south shoulder where the Brown automobile was struck broadside by the oncoming tractor-trailer unit. The children and their grandmother were killed outright. The grandfather survived the collision, however, he has no recollection of the accident.
The evidence reflects that upon reaching the T-intersection, Mrs. Brown came to a complete stop for some two or three seconds and then proceeded forward across the Louisiana Highway 42 to the point of collision.
When Mrs. Brown slowed to the stop, the tractor-trailer unit was approximately 300 feet East of the T-intersection proceeding West on Highway 42. The driver of the tractor-trailer unit testified that because of the weight of his load he was using ninth gear at which the maximum speed of his truck was 40 or 45 miles per hour and, as soon as it became apparent that Mrs. Brown was starting forward into the East-West roadway, that he sounded his horn and began applying his foot brakes.
A disinterested eye witness, Gordon W. Jones, who was parked in a truck just off the south side of Highway 42, approximately 300 feet East of the T-intersection testified that the tractor-trailer unit sounded his horn when it was directly in front of him. At that time he estimated the speed of the tractor-trailer unit as 50 to 55 miles per hour. Upon hearing the horn he looked up, saw the truck directly opposite and then looked down the road and saw the car. At the time the car was stopped and then started across the highway. As the car started across the highway, the truck-tractor unit veered to the left side of the highway onto the shoulder where it struck the automobile. The tractor-trailer unit left skid marks of 96 to 99 feet from the point where the brakes were first applied to the point of collision.
The sequence of events was therefore, as follows: The truck driver blew his horn by his own testimony when the car started out into the intersection. When the horn blew, the truck was right in front of the eye witness, which was 300 feet from the intersection. This distance was substantiated by a plat introduced by the defendants. The automobile was off on the south shoulder some ten feet off the road when it was struck. The automobile had traveled a distance by measurement of about 75 feet from the stop sign before the impact.
There were two witnesses, namely, L. F. Kimball and Homer Hoyt who testified to the fact that the driver of the tractor-trailer unit admitted to them shortly following the accident that upon seeing the impending accident he laid down on the floor of *486 the truck and grabbed the hand brakes. His reason for such a course of action was to avoid being killed by the pilings should they be thrown forward into the cab as a result of the impact.
Defendants claim that, when the Brown vehicle started across the road from the stop sign, the truck was in such close proximity that a sudden emergency was created and the accident was virtually unavoidable. They claim that Lee Jones’ act in veering to his left in an attempt to avoid the collision was reasonable under the circumstances. We cannot agree with this contention.
In view of the moderate speed at which the truck was being operated and its distance from the intersection when Mrs. Brown pulled out, we find that a sudden emergency was not then created.
It is perfectly clear that had Jones simply maintained any kind of reasonable control of his vehicle and directed it in a proper manner consistent with the dangerous situation taking place ahead, he could easily have avoided the accident. All he had to do and he had plenty of time in which to do it, was to sit up behind the wheel of his truck and hold it in the road. If he had kept on a straight course, the accident never would have happened. We believe that the action of young Jones in throwing himself to the floor of the van constituted negligence which was a proximate cause of the accident.
The pre-trial order filed herein shows that the petitioner settled any and all claims they might have had against the Browns and their insurer prior to the trial of the matter. The Browns were not made defendants to the original suit, however, their negligence was pled by the defendants. It is submitted by the defendants that the judgment of the Lower Court in the sum of $35,000 was the total amount of damages sustained by the petitioners and that, therefore, as co-tortfeasors, the named defendants are only liable for half of said sum, the other half being due by the Browns.
Although we are not favored with written reasons from the Lower Court, however, the judgment rendered is in favor of petitioners “. . . against Freiler Industries, Inc. and Transit Casualty Company, in solido, in the full sum of $35,000. . ” There is nothing in the judgment as written which would indicate that said parties only owed one-half of said sum.
With regard to quantum, in Sylvester v. Liberty Mutual Insurance Company, La.App., 237 So.2d 431 which went before the Supreme Court at 256 La. 764, 238 So.2d 748 and was finally decided by the Appellate Court again at 245 So.2d 497, the Supreme Court approved an award for the death of minor children based on $20,000 per parent per child.
As two children were killed in this unfortunate accident, based upon the Sylvester case, each of their parents would be entitled to an award of $40,000, thus making the total amount of quantum at $80,000. The Trial Judge apparently felt that an award of $35,000 fairly represented one-half of their loss, grief, suffering and anguish.
We find no error in the decision of the Trial Court, and, for the reasons herein-above assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by defendants.
Judgment affirmed.