LEMMON, Judge.
This is a suit by Mr. and Mrs. Nicholas Lopitz to recover damages for personal injuries incurred by them and their minor son, Nicholas, Jr., and for the wrongful death of their minor son, Beau. The accident occurred when Lopitz’s car plunged into Bayou Willow in Jefferson Parish. After a trial on the merits, the district court found the Louisiana Department of Highways negligent in failing to adequately warn motorists of the dangerous condition created by the termination of Louisiana Highway No. 301 in close proximity to the bayou and rendered judgment in favor of the plaintiffs.[1] The Department appealed suspensively, and plaintiffs answered the appeal, seeking an increase in the awards.
In this court the Department admits its duty to warn motorists traveling the highway of the unquestionably dangerous condition. However, the Department contends it discharged this duty by erecting and maintaining proper and adequate warning signs and by periodically inspecting them. The Department further contends that if these signs were not in place at the time of the accident, it had received no notice of their absence. Alternatively, the Department contends plaintiffs were contributorily negligent.
The accident occurred at about 9:00 P. M. on March 19, 1967 at the point where Highway No. 301 terminates near Lafitte. Lopitz, his wife, two of his sons and a granddaughter were enjoying a Sunday afternoon drive and decided to visit their neighbors, who were spending the weekend at a camp in the Lafitte area. They arrived about 3:00 P.M. and enjoyed an afternoon of fishing and crabbing. After darkness set in, the Lopitz family began their return trip home. As Lopitz, who had never been in the area before, drove along the two lane, hard surfaced road, suddenly and without warning the road ended, and the car plunged into the bayou.
The following photographs, introduced by - the Department, show the termination of the road and the proximity of the bayou'.

*271

*272 When the first photograph (Exhibit D-1) was taken the morning after the accident, the warning signs were missing from the posts, which were still in place near the end of the hard-surfaced road. The road continued to the bayou, with a grav-elled or shelled surface for a distance of 25 to 50 feet from the end of the blacktop to the water’s edge. There was a wharf or landing at the end of the shelled road which, according to one local resident, could easily be mistaken at night for a bridge. Several similar accidents had occurred at the same location.
Another shelled road perpendicular to Highway No. 301 began just past the signs and extended (to the right in the photographs) for a short distance along the bayou. A few camps were located on this road.
The second photograph (Exhibit D-2) shows the signs that the Department contends had been posted since June, 1966. Each post was six feet in height and held two signs, the stop sign (30" x 30") being red with white lettering and the dead end sign (36" x 36") being yellow with black lettering. All were scotchlite signs, which “brighten up like a light” when a headlight is cast upon them.
The trial judge found as a fact that the signs were not in place on the night of the accident. Although there was testimony to the contrary, we cannot find that the trial judge committed manifest error by accepting the evidence which supports this funding of fact.
However, the Department contends it had neither actual nor constructive notice that the signs were missing. The trial judge found that the Department knew the signs were frequently removed or knocked down and that the Department had failed to either use more secure signs or to inspect and replace the signs often enough under these circumstances, the last recorded inspection having been made a month and a half before the accident.
Noting that the Department inspector, who had the authority to make decisions concerning posting of warning signs and barricades, had never visited the accident scene at night, the trial judge made the cogent observation that “if ever a site called for the erection of a permanent barrier across the highway, this was such a case.”
We believe that this observation was the key to the Department’s major breach of duty in this case. Posting the signs shown on Exhibit D-2, even if they had been in place on the night of the accident, did not constitute an adequate discharge of the Department’s duty to motorists using this highway.[2] In our opinion the Department had a duty not only to warn motorists of the dangerous condition (in which duty we agree with the trial judge that they failed), but also to exercise reasonable efforts to remedy the condition.
The dangerous condition was apparently not the result of temporary construction, but was one of long standing. Failure of the Department to take any steps whatsoever to correct the dangerous condition, such as by erecting a barricade at the point of termination of the highway, constituted negligence which caused this accident. The Department was also negligent in failing to post and maintain adequate and secure signs warning of the sudden termination of the highway into the bayou, which was not reasonably observable by a night motorist exercising ordinary care. See Lejeune v. State Through Department of Highways, 215 So.2d 150 (La.App.3d Cir. 1968).
Since we affirm the trial judge’s finding that there were no warning signs on the night of the accident, there is no basis to find negligence on the part of Lopitz, who had taken the wrong route and was completely unaware of the extreme *273 hazard until trapped in it. Mrs. Lopitz, although somewhat familiar with the area, was asleep at the time of the occurrence,
QUANTUM
The trial court awarded 20,000.00 to each parent for their loss of love, affection, and companionship suffered because of the wrongful death of their three year old son. Beau was their last child, having been born after Lopitz retired from military service, and was very close and dear to them. The award is within the range of the “much discretion” vested in the trial judge. C.C. art. 1934(3).
The balance of the award consisted of the following items :
Loss of automobile $1,552.78
Loss of personal property 1,500.00
Funeral expenses 800.16
$3,852.94
We find no manifest error in the determination of the loss or the value of those items.
Plaintiffs contend that the trial judge erred in rejecting their claim for the injuries sustained by Mr. and Mrs. Lopitz and by Nicholas, Jr., and for Lopitz’s loss of wages.
The accident occurred on March 19, 1967. Lopitz sought medical attention at the U.S. Public Health Service Hospital on April 2, 1967, complaining of chills and fever which had begun the previous evening. He stated a history of malaria and hepatitis, with intermittent recurring episodes of chills and fever over a period of 20 years. He was admitted to the hospital four days later, where jaundice and hepatospleno-megaly (enlargement of the liver and spleen) were diagnosed.
The treating physician, who was unaware of these previous episodes of chills and fever, stated his opinion that the hepatitis resulted from acute leptospirosis, an infection by an organism. The infection is usually found in humans after contact with relatively stagnant water or direct contact with infected animals.
Several tentative diagnoses were indicated in the hospital records. Results of the laboratory tests'to confirm the diagnosis of leptospirosis, which takes two months to complete, were not introduced in evidence, nor did the person who performed these tests appear at trial. Furthermore, no testing of the water was conducted, and there was no evidence produced that the water was in fact stagnant. In fact several residents testified they swam there regularly.
Although we agree with the trial judge that the evidence was close on this issue, we are unable to find manifest error in his determination that Lopitz failed to prove by a preponderance of the evidence that the hepatitis resulted from the accident. Since the loss of wages was sustained during this hospitalization, that item of damages was also properly denied.
The older son admitted he sustained no injuries whatsoever.
Mrs. Lopitz sustained bruises on the left side of her head, over her left eye, on her forearm and on both knees, and a small laceration on her leg. She received emergency treatment at the U.S. Public Health Service Hospital and consulted her family physician four days later. This doctor testified that these injuries healed rapidly and disabled her only for a week or two. An x-ray of her skull was negative for fracture.
She continued to see the doctor occasionally for stress and functional complaints, chest pains and abdominal discomfort which he attributed primarily to her depression and anxiety resulting from the loss of her son. He prescribed tranquilizers and antidepressants over a period of time and finally hospitalized her in August for testing, which proved negative except for stomach spasm. She continued on medication and ultimately at trial presented drug bills in the amount of $947.83.
*274 Since the trial judge made no award to Mrs. Lopitz for pain and suffering, he apparently concluded that her physical injuries were minor and that her principal problems resulted from grief over her son’s death rather than from the injuries which she herself received in the accident. We concur with this conclusion, but believe the trial judge erred in not making any award whatsoever for the relatively minor physical injuries she did sustain. In our opinion Lopitz is entitled to recover the sum of $38.00 for the medical expenses of her office visits and treatments on March 23 and 28, 1967 and $20.00 for the x-ray of her skull. We further believe Mrs. Lopitz is entitled to recover the sum of $250.00 for her pain and suffering resulting from these physical injuries.
Accordingly, the judgment of the trial court is amended to include the award of medical expenses to Nicholas Lopitz, Sr. in the amount of $58.00 and the award of damages for pain and suffering to Mrs. Emma Zoe Sanders Lopitz in the amount of $250.00. As amended, the judgment is affirmed.
Amended and affirmed.

. The Parish of Jefferson was also joined as a party defendant, but was dismissed by a summary judgment on the grounds that Highway No. 301 was under the exclusive control of the Department of Highways. There was no appeal from the summary judgment.

. Admittedly, presence of the signs may have enhanced the Department’s argument on contributory negligence.