281 So.2d 805 (1973)
Herbert S. ADDISON, Jr., et ux.
v.
The TRAVELERS INSURANCE COMPANY.
Stewart CARRIER et ux.
v.
The TRAVELERS INSURANCE COMPANY.
Glenn REID, Individually, and as the Administrator of the Estates of his minor children, Kathy Reid and Glenn Reid, Jr., and Doris Reid
v.
The TRAVELERS INSURANCE COMPANY.
Harold STRICKLAND, Individually, and as the Administrator of the Estate of his minor child, Dewaine Strickland
v.
The TRAVELERS INSURANCE COMPANY.
Nos. 9410-9413.
Court of Appeal of Louisiana, First Circuit.
June 29, 1973.
Rehearings Denied August 22, 1973.
Writs Refused October 12, 1973.
*807 Frank M. Coates, Jr., Baton Rouge, for Travelers.
Joseph H. Simpson, Amite, for appellee Addison.
Tom H. Matheny, Hammond, for appellees Hartford Acc. Ins. Co., Huey and Beverly Duncan.
Marion B. Farmer, Covington, for Huey and Beverly Duncan, for appellee.
Before LANDRY, TUCKER and PICKETT, JJ.
PICKETT, Judge.
These four consolidated suits arose out of an accident that occurred in the Parish of Tangipahoa at approximately 3:15 p. m. o'clock on April 25, 1972, on Louisiana Highway 1054, about 1.1 miles North of the intersection of Louisiana 1054 and Louisiana Highway 16 and about two miles from the City of Amite, Louisiana. The vehicles involved were a 1968 Ford Station Wagon owned by Huey P. Duncan, and operated by his wife, Mrs. Beverly W. Duncan, and a 1968 Chevrolet work truck owned by the Louisiana Department of Highways and driven by Russell J. Costa, who was employed by the Louisiana Department of Highways. At the time of the accident, the Duncan vehicle contained ten school children whom Beverly W. Duncan was returning to their homes from the Valley Forge School, a private school.
As a result of the accident, four of the school children were killed, and three other children were injured. Mrs. Duncan also sustained severe injuries.
Herbert S. Addison, Jr. and his wife, Mary Lou Addison, the parents of Regina Carol Addison, who died as a result of the accident; Stewart Carrier and his wife, Bonnie Clark Carrier, the parents of Dorena Carrier, who died as a result of the accident; Glenn Reid and his wife, Doris Reid, the parents of Sandra Reid, who died as a result of the accident, and Kathy Reid and Glenn Reid, Jr., who were injured; and Harold Strickland, the father of Dewaine Strickland, who was injured in the accident, brought suit for the death and injury to their respective children. The defendants are the Travelers Insurance Company, insurer of the Louisiana Department of Highways, and Hartford Accident and Indemnity Company, the insurer of the Duncan vehicle. They allege the accident and resulting damages were caused by the negligence of the driver of the Highway Department truck and Mrs. Beverly W. Duncan. It was alleged that Russell J. Costa, the driver of the Department of Highways truck, was acting in the course and scope of his employment at the time of the accident.
The Hartford Accident and Indemnity Company (Hartford) responded with an answer and third party petition for a concursus proceeding, and deposited in the Registry of the Court the sum of $20,000.00, representing the extent of its coverage on the Duncan vehicle.
The following persons were impleaded and made defendants in the concursus proceeding: John Sirchia, Sam Ferrara, Charles Baglio, Mr. and Mrs. Glenn Reid; Huey Duncan and Beverly Duncan; Mr. and Mrs. Stewart Carrier; Mrs. Joe Hayden; Mr. and Mrs. Ellis Hayden and Mr. and Mrs. Harold Strickland.
The Travelers Insurance Company filed third party demands against each of the plaintiffs alleging that a proximate cause of the accident was the negligence of Beverly W. Duncan. It alleged that Mrs. *808 Duncan was at the time of the accident engaged in a community mission for the community existing between Huey P. Duncan, and his wife, and that her negligence was imputable to Huey P. Duncan, the head and master of the community. Furthermore, it alleged that at the time of the accident, Mrs. Duncan was the agent, employee or joint venturer with the plaintiffs and that her negligence was imputable to them.
On motion of the Hartford Accident and Indemnity Company, these cases were consolidated for trial. The Travelers Insurance Company obtained a trial by jury of the consolidated cases.
In the Addison case (No. 9,410) there was judgment in favor of Herbert S. Addison, Jr. and Mary Lou Addison and against the Travelers Insurance Company, in the sum $55,000.00, and in favor of Herbert W. Addison, Jr. and against the Travelers Insurance Company for the sum of $5,437.68 in special damages for medical, hospital, and funeral expenses.
In the Carrier case (No. 9,411), judgment was rendered in favor of plaintiffs, Stewart Carrier and Bonnie Clark Carrier, and against the defendant, The Travelers Insurance Company, in the sum of $52,500.00; and the further sum in favor of Stewart Carrier, of $2,901.70 in special damages, for medical, hospital, and funeral expenses.
In the Reid case (No. 9,412) judgment was rendered in favor of plaintiffs, Glenn Reid and Doris Reid, and against The Travelers Insurance Company, in the sum of $52,500.00, and the further sum in favor of Glenn Reid, of $2,281.60 in special damages for hospital, medical and funeral expenses. There was judgment in favor of Glenn Reid, as administrator of the estate of Kathy Reid, and against the Travelers Insurance Company, in the sum of $1,000.00; and judgment in favor of Glenn Reid, as Administrator of the estate of Glenn Reid, Jr. and against Travelers Insurance Company in the sum of $1,000.00.
Mr. Harold Strickland (No. 9,413) was awarded a judgment in his individual capacity in the sum of $690.23, and as the administrator of the estate of his minor son, Dewaine Strickland, in the sum of $10,000.00.
There was further judgment in each of the cases in favor of Hartford Accident and Indemnity Company and against the plaintiffs dismissing each of the suits as to Hartford Accident and Indemnity Company at the costs of the plaintiffs. There was further judgment in the third party demands in each of the cases, against the third party plaintiff, The Travelers Insurance Company, and in favor of the third party defendants, dismissing the third party demands at the cost of third party plaintiff.
With respect to the concursus proceeding, there was judgment dismissing the concursus proceeding as to all parties and releasing the money deposited in the concursus to Hartford Accident and Indemnity Company, without cost or interest.
The Travelers Insurance Company has appealed suspensively in each of the cases.
Each of the plaintiffs has appealed devolutively.
Separate petitions were filed in each of these cases but they were consolidated for trial. With the exception of the question of quantum, and the concursus proceeding, the basic issues involved are essentially the same. Therefore, we shall treat these consolidated cases as one for the purpose of this opinion with a copy hereof to be filed in each case.
Louisiana Highway 1054 is a two-lane black-topped road, which runs in a generally east-west direction, at the scene of the tragic accident, which is the basis of this litigation. The road is straight for a considerable distance eastward from the site of the accident. The evidence shows that about six hundred feet east of the accident scene, the highway passes over a small hill, from the crest of which to the accident *809 scene the parked highway truck was constantly visible. Trooper Fred J. Piazza, who investigated the accident, said the paved portion of the highway was twenty feet and five inches wide. At the site of the accident, the shoulder of the road was approximately two and one half feet wide, but gradually sloped to a shallow ditch, that was parallel to the highway, in such a manner that there was ten feet and four inches of usable ground on the side of the highway where the highway truck could have been parked off the traveled portion of the road. On the opposite side of the highway from where the collision occurred, there is an abandoned driveway, across which a wire fence has been constructed at a sufficient distance from the road, that Trooper Piazza said two cars could easily park off the traveled portion of the highway.
Mrs. Beverly W. Duncan was, at that time, assistant principal and a teacher in the Valley Forge Academy, a private school located on Louisiana 1054, about five miles easterly from the accident scene. On this particular day, Mrs. Duncan was returning home from the Valley Forge Academy, traveling in a westerly direction in a 1968 Ford Station Wagon, with ten school children as passengers, when she ran into the left rear of a Louisiana Highway work truck parked partly in her lane of travel. The force of the impact was so great that it caused the death of four of the children, namely: Regina Carol Addison, Dorena Carrier, Sandra Reid and Mrs. Duncan's own son, Craig. Kathy Reid, Glenn Reid, Jr. and Harold Strickland were injured. Mrs. Duncan sustained severe injuries from which she has not fully recovered. Based on the physical evidence, it does not appear that Mrs. Duncan saw the Highway truck in time to take effective evasive action. Sergeant Piazza observed tire marks that showed she swerved her vehicle to the left twenty-two feet to the rear of the point of impact. The right front of her vehicle struck the work truck. Based on the physical evidence, Sergeant Piazza estimated the speed of the Duncan vehicle to be fifty miles per hour. The force of the impact knocked the Highway truck quite a distance along the shoulder of the road and into the roadside ditch. The Duncan Station Wagon came to a stop in the paved portion of the road.
Neither the surviving children, nor Mrs. Duncan, because of post-traumatic amnesia, could recall the events leading up to the accident. Mrs. Duncan said that her last memories of events prior to the accident were occurrences at Valley Forge before leaving the school to return home. The defendants suggest that the work truck was parked in the shade of a large oak tree, and that the shadow cast on the truck and road reduced visibility to such an extent that Mrs. Duncan could not see it until she was too near to take effective evasive action. They, also, theorized that she was facing the sun, which at that time of day, interfered with her vision. Furthermore, it is suggested that although the Highway truck is about ten feet high and eight feet wide, and painted Omaha Orange in order to make it more visible, the paint had faded and the body of the truck was dirty, all of which reduced its visibility. Another theory advanced was that the leaves on the oak tree that cast the shade on the highway and truck, could have been disturbed by the wind blowing through them, and cause the shadows cast on the truck to move in such a manner as to give the truck the appearance of being in motion. But there is no positive evidence that the wind was moving the leaves at the time of the impact.
Any opinion as to why Mrs. Duncan did not see the Highway truck parked in her lane of travel is mere speculation and she, because of her amnesia, has not been able to explain why she failed to stop, or go around the parked truck. The fact remains that she collided with the truck. The evidence shows that there was an elevation in the road at least 600 feet from the accident scene, and the truck *810 should have been constantly visible from that point to where the collision occurred. She is presumed to have seen what she should have seen. She should have observed the parked Highway truck under the circumstances, at a considerable distance, and in time to move to her left and avoid the collision. There is no evidence that she was meeting a vehicle that would have prevented her moving into the unobstructed left lane and avoid the collision. Her failure to take the evasive action that she could have taken was actionable negligence. Rowe v. Travelers Insurance Company, 253 La. 659, 219 So.2d 486. Furthermore, the defense that she was facing the sun does not excuse her. In the middle of the afternoon the sun should not have been at such an angle as to seriously interfere with her vision. But if the sunlight was blinding her to such an extent that she could not clearly see the road ahead, it was her duty to reduce her speed so that she would have her vehicle under control at all times. Hence, Mrs. Duncan is liable. Since Mrs. Duncan was obviously on a community mission at the time of the accident, her negligence is imputable to her husband, Huey P. Duncan; and their insurer, Hartford, is also liable.
The next question for decision is whether the driver of the Highway truck was guilty of negligence, and if he was negligent, was that negligence a legal cause of the accident.
At the time of this accident, Mr. Costa, the driver of the truck involved in this accident, was employed by the Louisiana Department of Highways as Labor Utility Foreman for a crew of four men. He was in charge of the truck and three tractors used in mowing grass along the highway. His crew consisted of Sam Ferrara, Charles Baglio, John Vincent Sinclair, and Angelo P. Sinagra. Three of the crew operated the tractors, and the fourth man clipped grass and weeds which were inaccessible to the tractors, and performed other incidental duties in connection with the maintenance of the highway. Apparently 3:00 o'clock p.m. was quitting time for the highway crew. At about that time, Mr. Costa, the foreman, parked the work truck, partly on and partly off the highway, on the north side thereof, under a large oak tree in front of Doc Pettit's home. Mr. Costa turned off his motor, got out of the truck and went around behind it and picked up the last of the signs used to warn motorists that men were working. In the meantime, the tractor drivers parked the tractors on the shoulder of the road on the opposite side from the work truck. They had already entered the truck, and one man was on the front seat, and the other two in the back part of the truck, when the impact occurred. The other crew member was standing beside Mr. Costa, who had just hung up, or was hanging up, the last sign on the side of the work truck at the moment the Duncan vehicle struck the Highway truck. Therefore, at the moment of impact, the motor was not running, and the driver was not in the truck. There is some dispute as to whether the blinker lights had been turned on when the truck was parked. Mr. Costa and some of the members of his crew testified positively that the blinker lights were in operation at the time of the collision. However, Trooper Piazza checked the switch for the blinker lights soon after the accident and found that the blinker lights were turned off when he checked them. Because of the positive evidence of Mr. Costa and some members of the work crew, we conclude the blinker lights were in operation. But that fact does not absolve Mr. Costa from fault. He admitted that all the flags and other warning signs had been picked up, and that no one was flagging traffic at the time of the collision. Hence, there was no flagman, and there was no warning signs of any nature to alert Mrs. Duncan that the parked highway truck occupied approximately two-thirds of her lane of travel as she approached the truck.
The plaintiffs contend that parking the Highway truck on the main traveled portion *811 of the highway in Mrs. Duncan's lane of travel was the cause of the accident and was illegal and negligent, and in contravention of LSA-R.S. 32:141 (A), which provides:
"Upon any highway outside of a business, or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway."
The above quoted statute prohibits any person from parking on the "main traveled part of the highway when it is practicable to stop, park or to leave such vehicle off such part of said highway, ..."
The Highway truck extended six feet and six inches into the west bound lane of travel, and faced westerly. As previously stated, the evidence shows that there was ten feet and four inches of usable parking space on the west side of the highway at the accident site, where the truck could have been parked completely off the traveled portion of the road. Furthermore, immediately across the paved portion of the road from where the highway truck was parked, there was an abandoned driveway, no longer used as a private driveway, where at least two vehicles could have been parked. Hence, there was ample room on each side of the highway in that immediate area to have parked the truck off the highway. There is no contention that the truck was disabled so as to excuse Mr. Costa under LSA-R.S. 32:141(B). But defendant, Travelers, contend that the driver of the Highway truck was exempt under the provisions of LSA-R.S. 32:23 which reads as follows:
"Unless specifically made applicable, the provisions of the Chapter shall not apply to person, teams, motor vehicles and other equipment while actually engaged in work on a highway, but shall apply to such persons, teams, motor vehicles and other equipment when traveling to or from such work."
The source of the above quoted statute is R.S.1950, Section 32:246. The Court of Appeal, Second Circuit, in Turner v. State through Department of Highways, 137 So.2d 456, held that the statute relates to exemptions from criminal liability, and not from civil liability predicated upon LSA-C.C. Art. 2315. In that case the court said:
"The exemption from compliance with the provisions of the statute obviously relate to an exemption from criminal liability for noncompliance with the prescribed regulations such as pertain to the operation of or size of motor vehicles and the obstruction of highways, et cetera, and not to civil liability for the negligence of defendant's employees."
In Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821, in discussing the applicability of criminal statutes in fixing civil liability, the Supreme Court said:
"Criminal statutes are not, in and of themselves, definitive of civil liability. They are, however, guidelines to which a court may resort to establish the proper standard of care for assigning civil liability. Criminal statutes do not set forth the civil rule; it is the court which by analogy must determine whether the statutes can define the rule to be applied in civil cases."
In Pierre v. Allstate Insurance Company, supra, the Court also, said:
"We conclude that the statutory prohibitions in this case against parking vehicles so as to impede or obstruct traffic not only were designed to avoid the possibility that a prudent driver could be forced to run into the parked vehicle or *812 into another vehicle, but also were designed, `* * * at least in part, to afford protection * * from the hazard of confused or inattentive drivers colliding with stationary vehicles on the highway.' Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298, 304."
No provision is made in the last above quoted statute for the exemption of the Department of Highways for the acts of its employees which cause damage to others. Mr. Costa had not only parked the highway truck in such a manner that it impeded the normal flow of traffic on the west bound lane, but he had parked the vehicle in the shade of a large oak tree, the least conspicuous place in the immediate portion of the highway; and then made no effort to warn approaching motorists. He displayed no warning signals, and had no one to direct traffic. Mr. Costa's negligence was clearly a proximate cause of the accident. Furthermore, the established facts do not support the defendant's position that Mr. Costa was exempt under the provisions of LSA-R.S. 32.23. At the time this accident occurred, the highway crew were not "actually engaged in work on a highway". The highway crew had completed their work for the day, and were making necessary preparations to return home. The tractor drivers had parked their tractors, and had entered the work truck, and Mr. Costa and the other crew member had picked up the last traffic sign and were standing at the side of the truck at the moment of impact. Therefore, Mr. Costa was not exempt from the traffic regulations embodied in Title 32 of the Revised Statutes of Louisiana. Taking into consideration the evidence adduced in these cases and the law applicable thereto, we conclude that under the tests laid down in Dixie Drive It Yourself System v. American Beverage Company, supra, and Pierre v. Allstate Insurance Company, supra, Mr. Costa's negligence was a proximate cause of the accident under consideration.
The defendant, Travelers, being the insurer of the defendant, the Department of Highways of the State of Louisiana, as a joint tort feasor, is solidarily liable for the damages suffered by the plaintiffs.
We now consider the question of quantum.
The jury awarded Mr. and Mrs. Addison each $25,000.00 for the death of their daughter, Regina Carol Addison. Counsel for the plaintiffs contend that the awards were inadequate, while the attorneys for the defendant, Travelers, argue the awards are excessive, and should be reduced.
Hence we are called upon to review these awards of $25,000.00 to each parent for the loss of the love and affection of their daughter to see if the jury abused its "much discretion." In Sylvester v. Liberty Mutual Insurance Company, 237 So.2d 431, each parent was awarded $30,000.00 for the life of each child, by the trial court. The Court of Appeal, Third Circuit, reduced the award to $20,000.00 for each parent for the death of each child. In Luttrell v. State Farm Automobile Insurance Company, 244 So.2d 97 (3rd La.App. 1971), a mother was awarded $20,000.00 for each of her two minor children killed in a traffic accident." In Lopitz v. Louisiana Department of Highways, 268 So.2d 269, each parent was awarded the sum of $20,000.00 for the loss of the life of their three year old son. In Keaton v. Transit Casualty Company, 263 So.2d 484 (1972), this court awarded $35,000.00 to the parents due to the death of their two children. In Poston v. Firemen's Insurance Company of Newark, New Jersey, 256 So.2d 700 (2nd La.App.1972), a mother was awarded $35,000.00 for the death of her nineteen year old son. Taking into consideration the facts peculiar to this case, and awards previously made in similar cases, we find no abuse by the jury of its "great discretion" in the awards for the death of the daughter of Mr. and Mrs. Addison. *813 LSA-C.C. Art. 1934(3); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127; and Ballard v. National Indemnity Co., 246 La. 963, 169 So.2d 64 (1964).
The amount awarded to Mr. Addison for special damages is not disputed. The evidence shows that the minor, Regina Carol Addison, was rendered unconscious because of the injuries sustained in the accident, and that she remained unconscious until her death. There is no evidence that she consciously suffered any pre-death pain. Therefore, the award of $2,500.00 to each of the parents of Regina Carol Addison for pain and suffering is disallowed. In Palmer v. American General Insurance Company, 126 So.2d 777, this Court said:
"The lower court awarded Margaret H. Palmer $5,000.00 for the pain and suffering endured by Carol White before her death. Generally, under our jurisprudence, it is necessary for a survivor in a survival action under art. 2315 of the LSA-Civil Code to show that the decedent did in fact suffer shock, pain and suffering before death; and that unconsciousness of the decedent from the time of the accident to the time of death precludes recovery. Chanson v. Morgan's L. & T. R. R. & SS. Co. et al., 1 Cir. 1931, 18 La.App. 602, 136 So.2d 647; Todd v. New Amsterdam Cas. Co., La.App. Orleans, 1951, 52 So.2d 880; Andrus v. White, La.App. 1 Cir. 1958, 101 So.2d 7."
For the reasons set forth in affirming the awards made to Mr. and Mrs. Addison for the death of their daughter, we find the award of $25,000.00 each to Stewart Carrier and Bonnie Clark Carrier, for the death of their daughter, Dorena Carrier, to be neither inadequate nor excessive; and accordingly affirm the same. The evidence shows that their daughter died without regaining consciousness, and that there is no evidence that she suffered any predeath pain after the accident. Therefore, the jury award for pre-death pain and suffering of Dorena Carrier is reversed. The amount awarded to Mr. Carrier for special damages is not contested.
Likewise, for the reasons set forth in affirming the awards made by the jury to Mr. and Mrs. Addison, we find the award made by the jury of $25,000.00 each to Glenn Reid and his wife, Doris Reid, for the death of their daughter, Sandra Reid to be neither inadequate nor excessive; and accordingly affirm the same. However, there is no evidence that their daughter, Sandra Reid, suffered any pre-death pain following the accident. Hence, the jury's award for pre-death pain and suffering of Sandra Reid is reversed. The amount awarded to Mr. Reid for special damages is not contested.
Glenn Reid, Jr., age nine, was awarded the sum of $1,000.00 for his injuries. The only evidence in support of this award is the testimony of his father, Glenn Reid, Sr., who stated that Glenn had suffered some abrasions to his face. But he stated Glenn has recovered from these injuries. There is no evidence regarding his pain and suffering. The record is devoid of any medical evidence to support this claim. Mr. Reid stated Glenn was first treated at Lallie Kemp Hospital in Independence, Louisiana, and subsequently at the Southwest Ear, Nose and Throat Clinic in McComb, Mississippi. However, the only statement of any examination or treatment at either of these institutions is a report of Dr. Verner S. Holmes, M.D., which discloses that Glenn was seen on May 5, 1972 at which time he gave a history of difficulty in hearing. But no mention was made of an accident. The examination showed a mild conductive hearing loss due to enlarged adenoids. Dr. Holmes advised the removal of Glenn's tonsils and adenoids. Under the circumstances, we deem the award excessive and reduce the same to sum of $300.00. See Henson v. State Farm Mutual Automobile Insurance Co., La.App., 247 So.2d 185; and Funderburk v. Temple, 268 So.2d 689.
*814 On May 1, 1972, Kathy Reid was examined by Dr. Wendell B. Holmes, M.D., who found skin abrasions on the right and left sides of the forehead and on the right lower cheek. There was a subjunctival hemorrhage in the right eye with ecchymosis of the lid of the right eye. The examination showed vision of 20/80 in the right eye, and 20/50 in the left eye. It was Dr. Holmes' opinion that she would have no permanent injuries to her eyes. She was awarded the sum of $1,000.00, which we consider neither inadequate nor excessive.
Based on the report of Dr. G. L. Foret, dated July 3, 1972, Dewaine Strickland sustained a four-inch scalp laceration in the frontal area of his head that required thirty three sutures to close. He, also, sustained contusions of the right shoulder; contusions of the left thigh, and possible compression fractures of the bodies anteriorally of the 4th, 5th and 6th thoracic vertebrae. Dr. Foret made a diagnosis of probable renal contusion based on the fact that he had microhematuria, immediately after the accident. But this condition cleared up before he was last seen by Dr. Foret, his treating physician. Dewaine Strickland was hospitalized from April 25, 1972 to May 2, 1972, during which time he experienced considerable pain due to multiple soft tissue injuries. X-Rays of the involved area were negative except for the thoracic spine. Young Strickland was seen as an out-patient following his discharge from the hospital, and was last seen by Dr. Foret on June 6, 1972, for treatment of granulation tissue (prond flesh) in the scalp laceration. Otherwise, Dewaine was symptom free. On June 6, 1972, he was referred to Dr. Dan Sinclair for evaluation of possible fracture of the thoracic vertebrae. There is no evidence of the result of this referral. In summary, Dr. Foret expressed the opinion that Dewaine Strickland experienced temporarily painful injuries which produced no permanent or residual injuries and from which Dewaine had substantially recovered on the examination date of July 3, 1972. Mrs. Harold Strickland, the mother of Dewaine Strickland, confirmed the statement of Dr. Foret relative to her son's injuries. She, also, stated her son sustained a deviated septum which caused some difficulty in breathing. Based on the evidence of the nature and extent of the injuries of Dewaine Strickland, we deem the award made by the jury of $10,000.00 manifestly excessive and reduce the same to $5,000.00.
In response to the suit filed by Herbert S. Addison and his wife, Hartford filed an answer and third-party petition for concursus, admitted liability, and deposited in the Registry of the Court the sum of $20,000.00, representing the extent of its coverage of the Duncan vehicle. Hartford supplemented its pleadings to show that its admission of liability for the purpose of the concursus was without admitting any liability on the part of Mrs. Beverly W. Duncan for the accident which is the basis of this litigation.
These cases were consolidated for trial and the petition for concursus was heard at the same time. The trial court dismissed the concursus proceeding as to all parties and returned to Hartford the money deposited in the concursus, without cost or interest. Having found Mrs. Duncan liable as a joint tort feasor for the damages sustained by the plaintiffs, Hartford, as the insurer of the Duncan vehicle, is liable to the limit of its coverage to the same extent as Mrs. Duncan. Since the liabilities of Hartford are fixed because of its coverage of the Duncan vehicle, we deem it unnecessary to make further comments on the concursus proceeding.
The jury rejected the third party demands of Travelers. We agree with the finding of the jury in that respect, except for the liability of the Duncans, and their insurer, Hartford. The plaintiffs who were made third-party defendants had employed Mrs. Duncan to transfer their children to and from Valley Forge Academy each school day. They paid her for the *815 service. They were not engaged in a joint venture. Mrs. Duncan was not an agent or employee of the plaintiffs.
For the above and foregoing reasons, the judgment rendered in the above captioned causes is amended: By reversing the award in No. 9,410 of $2,500.00 each to Herbert S. Addison and Mary Lou Addison for pre-death pain and suffering of Regina Carol Addison; by reversing the award in No. 9,411 of $1,250.00 each to Stewart Carrier and Bonnie Clark Carrier for the pre-death pain and suffering of Dorena Carrier; by reversing the award in No. 9,412 of $1,250.00 each to Glenn Reid and Doris Reid for pre-death pain and suffering of Sandra Reid, and by reducing the award to Glenn Reid, Sr., as the administrator of the estate of the minor, Glenn Reid, Jr. from $1,000.00 to $300.00; and by reducing the award in No. 9,413 to Harold Strickland, as the administrator of the estate of the minor, Dewaine Strickland, from $10,000.00 to $5,000.00.
The judgment rendered in the above numbered and entitled causes is further reversed and amended in favor of each of the plaintiffs in said causes and against the defendants, Huey P. Duncan, and Mrs. Beverly W. Duncan and their insurer, Hartford Accident and Indemnity Company, to the extent of its coverage in the Sum of $20,000.00, with legal interest from judicial demand and court costs, in solido, with the defendant, Travelers Insurance Company, for the full sum of each award, as herein amended and affirmed, together with interest and costs.
There is further judgment requiring the Hartford Accident and Indemnity Company, as the insurer of Huey P. Duncan and/or Beverly W. Duncan, to prorate the sum of $20,000.00, the extent of its liability, together with interest at the legal rate and court costs to apply on the judgments of: Herbert S. Addison and Mary Lou Addison; Stewart Carrier and Bonnie Clark Carrier; Doris Reid and Glenn Reid, individually, and as the administrator of the estates of Kathy Reid and Glenn Reid, Jr.; and Harold Strickland, individually, and as the administrator of the estate of Dewaine Strickland. In all other respects, the judgment appealed from is affirmed. The defendants, Travelers Insurance Company, Huey P. Duncan and Beverly W. Duncan, and their insurer, Hartford Accident and Indemnity Company, to the limits of its coverage, are cast for all costs of these proceedings.
Amended and as amended affirmed.