146 So.2d 455 (1962)
James Donald PIERROTTI, Plaintiff-Appellee,
v.
LOUISIANA DEPARTMENT OF HIGHWAYS, Defendant-Appellant.
No. 668.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1962.
Rehearing Denied November 28, 1962.
Certiorari Denied January 14, 1963.
*456 D. Ross Banister, Philip K. Jones, George W. Lester, Thomas A. Warner, Jr., William J. Doran, Jr., by Thomas A. Warner, Jr., Baton Rouge, for defendant-appellant.
Tate & Tate, by Paul C. Tate, Mamou, for plaintiff-appellee.
Before TATE, SAVOY, and HOOD, JJ
TATE, Judge.
This is a suit for personal injuries and property damage caused by an automobile accident. The plaintiff Pierrotti sues the State of Louisiana through its Department of Highways, pursuant to authorization conferred by special Act 506 of 1960.
The defendant appeals from adverse judgment awarding the plaintiff $50,503.80. The plaintiff answers the appeal, requesting an increase in the award.
Just after midnight on February 12, 1960, Pierrotti was traveling westward on Louisiana Highway 13 from Mamou towards Oberlin. As he arrived at the intersection of Louisiana Highway 13 and Louisiana 104 (which connects that highway with Oberlin), he ran into a large hole at the intersection, causing him severe personal injuries.
Pierrotti alleges that the sole and proximate cause of the accident was the negligence of the highway department in constructing and maintaining what was, in the absence of adequate warning signs or barricades, a substantial hazard to westbound traffic intending to enter the intersection. Pierrotti also alleges that department was negligent in changing the intersection of these highways and in digging up the old highway roadbed and leaving a large unmarked hole between the highways at their intersection, all without putting up signs to indicate the change or otherwise giving notice to the public of the hazard thereby created.
In defense to the claim, the defendant Department contends (a) that the intersection of the highways at the place of the *457 accident was not hazardous to reasonably prudent traffic using the highways in the area, so that the Department was not negligent in constructing and maintaining it; (b) that, even if the intersection was hazardous and faulty, the Department did not have notice of the defect and therefore is not liable; and (c) that, in any event, the sole or a contributory proximate cause of the accident was the plaintiff Pierrotti's own negligence in failing to maintain a proper lookout and control of his vehicle.
The evidence shows the following concerning the change in the intersection (see sketch below incorporated in this opinion, being general representation of the intersection before and after its re-design):

*458 Prior to the redesigning of this intersection in 1957, Highway 104 was a gravel road, while Highway 13 was hard-surfaced and curving at almost a right angle at this intersection. Prior to the re-design of this intersection, vehicles traveling on Highway 13 in a westerly direction toward Oberlin, would continue to travel in a straight line at this curve in order to enter into Highway 104.
After the re-design of this intersection, Highway 104 was black-topped and was made to curve at almost a right angle, so that instead of running straight into Highway 13 as previously, it now intersected Highway 13 at an acute angle. The old roadbed of Highway 104, from where it had previously intersected Highway 13 to the presently existing Highway 104, was destroyed by digging it up to a depth from three to four feet deep and approximately twenty-five feet wide.
The record discloses that, at the time of the accident, the only traffic sign then at the scene indicated that Highway 104 to Oberlin continued straight ahead. The sign did not indicate that to get on Highway 104 you had to make a "jog" from Highway 13 at the new intersection, instead of going straight through the very short distance of the destroyed roadbed of the old Highway 104.
At the time of the accident, Highway 104 visually appeared to approaching westbound traffic still to intersect as a straight continuation of Highway 13, since at the time there were no warning signs at the "dead ending" of both highways or of the hole between them at the intersection. That is, visually the highways did not appear to be separated by the destroyed and abandoned roadbed, which was below the level of the travelled surface of the two highways. (Seven lay witnesses testified to this seeming appearance or optical illusion, and their testimony is corroborated by photographs taken soon after the accident.)
The plaintiff testified that he was familiar with the old intersection from previous trips before the change and that on the occasion of the accident, the first time he had been by the intersection in several years, his impression that he should continue straight (as before the re-design) to enter into Highway 104 was strengthened by his seeing the headlights of an eastbound vehicle approaching him on the present Highway 104 straight ahead of him.
However, as Pierrotti continued straight, suddenly his car dropped into the unmarked hole, and throwing him forward so that the steering wheel rim snapped and pierced his neck through the larynx, as well as causing other less serious injuries.
The abrupt termination of the old roadbed which had been destroyed, constituted in effect a sudden ending of a substantial portion of the traffic lane. It was of such a nature as to require a warning sign or barricade, since motorists are not required to anticipate that the roadway in which they are traveling will suddenly without warning run into a deep hole at an unmarked and abandoned roadbed. Carlisle v. Parish of East Baton Rouge, La.App. 1 Cir., 114 So.2d 62; Smith v. State, La.App. 1 Cir., 87 So.2d 380; Dowden v. State, La. App. 2 Cir., 81 So.2d 48; Reeves v. State, La.App. 2 Cir., 80 So.2d 206. "The highway authorities in the exercise of reasonable care toward motorists are required to post notices and signs warning them of dangerous conditions", Davis v. Department of Highways, La.App. 2 Cir., 68 So.2d 263, certiorari denied.
"Guards and warnings must be erected to protect travelers * * * at places where an old and dangerous road has been abandoned and a new location established, to protect travelers acting upon the belief, justified by appearances, that the old way is still open, * * *". 25 Am.Jur. Highways § 532. "* * * [T]hey must give adequate notice or warning, by barricades or otherwise, of the abandonment of a highway, where travelers without such notice would be exposed to injury by going upon such abandoned way, and are liable for *459 injuries proximately resulting from their negligent failure to do so." 25 Am.Jur. Highways § 130. See: Annotation, "Precautions to be taken for safety of travelers where highway or part of highway is abandoned," 71 A.L.R. 1206.
As the trial court stated: "* * * The Court can't conceive of anything more hazardous then what happened in this case. That is to say, to redesign an intersection from a straight road which leads into a major highway to an intersection which made almost a 90° degree turn, without placing any signs to indicate the change, and in addition to remove the straight highway by digging it up to a depth from three to four feet deep and approximately twenty-five feet wide, is almost wanton negligence."
The Department contends that the intersection was not hazardous, relying upon the expert testimony of its "geometric design engineer" to such effect. The testimony of this expert does indicate, it is true, that the new intersection was designed to afford a safer intersection relative to through traffic on the more heavily travelled Highway 13that is, it reduced the danger of head-on collisions caused by eastbound traffic from Highway 104 shooting out into Highway 13. However, this expert frankly admitted that it was not within his competence to testify as to the adequate signing necessary at the intersection in order to warn traffic of the sudden "dead ending" into a hole.
In short, while the change in the intersection may have produced greater safety with regard to certain hazards, it also created another type of hazard, unless adequate signs or barricades were placed (as, for instance, they were after the accident) to warn traffic that, instead of the straight continuation into Highway 13 of Highway 104 along its abandoned roadbed, there was now an abrupt drop below the highway surface into the excavated former roadbed.
Indeed, the lay witnesses testified that on several other instances after the redesign of the intersection other vehicles had run into the hole or had nearly done so (before more adequate warning signs were placed after the present accident), and a police juror testified that residents in the vicinity had asked him to complain to the highway department (and that he had done so) about the excessive danger created by the hole within the straight line of the continuation of Highway 104 along the abandoned roadbed.
The trial court correctly held that, in the absence of adequate warning signs or barricades, the defendant Department had designed, had ordered the construction of, and had maintained an extremely hazardous intersection, in that oncoming traffic could not reasonably observe and appreciate that there was a dangerous drop between Highway 13 and its apparently straight line intersection with Highway 104 along the old roadbed; that this hazard created and maintained by the defendant was the proximate cause of the accident; and that, by the exercise of ordinary care, the plaintiff could not reasonably have observed or anticipated that there was an unmarked abrupt and dangerous hole in the apparent straight path of the highway, i.e., in what appeared, to reasonable and ordinary observation, to be a straight continuation of the highway along which the plaintiff was travelling.
Insofar as the defendant Department contends it should not be held liable for the defect because it did not have notice thereof, it is necessary only to point out that the Department had itself designed and created the hazard and, ipso facto, had notice of the condition of the intersection. "Where the condition causing the injury was created or maintained by the municipality or other public authority itself, or by its employees in the discharge of their duties, no notice thereof is necessary as a condition precedent to liability," 25 Am.Jur. Highways § 438, p. 729. See also 40 C.J.S. Highways § 263, p. 312.

*460 Quantum.

As a result of the drop of his automobile into the hole, a rim of the steering wheel snapped and pierced the plaintiff's neck. It pierced the larynx, or upper windpipe, which is the organ of voice.
For a few hours after the accident, the plaintiff was in great pain, hardly able to breathe, and near death, until a tracheotomy was performed, by which an artificial opening was cut into his windpipe to permit him to breathe. Inflammation and infection in the wound persisted for nearly a year, during which time the plaintiff continued to breathe through a tracheal tube inserted into the artificial opening cut into his windpipe. Finally, a year after the accident, by a further surgical procedure, some of the cartilages (arytenoids) to which the vocal chords are attached had to be removed, in order to give the plaintiff more breathing space in the larynx.
The uncontradicted medical testimony shows that the plaintiff's vocal chords are permanently paralyzed, so that the plaintiff now has a poor and hoarse voice. (The trial court stated that the plaintiff's voice was "impaired to the extent that he can not make himself heard beyond a loud normal whisper.")
Further, the uncontradicted medical shows that an additional permanent residual from the accident is that, due to the poor air supply and his difficulty in breathing, the plaintiff cannot run or walk fast or perform any physical labor or exertion, and must be very restricted in his physical activities.
Not only are these conditions permanent, but the medical testimony indicates that the prognosis is guarded concerning whether or not he might have future greater difficulty with his breathing, so as to require further surgery.
The plaintiff is a 23-year old young man, in excellent health prior to the accident. He was a barber by occupation, and, before the accident, his social and recreational activities included considerable hunting, fishing, swimming, and dancing. He can engage in none of these activities because of the injuries received in the accident; he cannot even mow his own lawn or run to catch a bus, etc.
The plaintiff was completely disabled for three months and, when he returned to work, he found his weekly earnings decreased from $65-75 before the accident to about $40-45 after the accident. After thirteen months at these reduced earnings, the plaintiff moved to a larger city, where his weekly earnings again average $65. Plaintiff's counsel points out, however, and the trial court held, that the ability of a barber to converse pleasantly with his customers is one of the methods by which he attracts customers, and that this young man undoubtedly suffered a permanent diminution of his earning capacity in his trade through the loss of his voice into a hoarse and sickly whisper, indicated by the drop in his earnings before and after the accident at his old location.
The trial court awarded the plaintiff a total of $50,503.80. The defendant-appellant seeks to have his judgment reduced, while the plaintiff-appellee answers this appeal praying for an increase in the judgment, principally on the grounds that the plaintiff is a barber and as such his diminution of earning capacity was and will be greater than the amount allowed.
The trial court award represented special damages for medical, surgical, hospital and nursing expenses ($1,825.30), property damage ($425.00), loss of earnings during the three months away from work ($913.50), and general damages for permanent diminution of earning capacity, impairment of speech, physical pain and suffering, and for mental anguishment, humiliation, and embarrassment.
Considering the permanent almost complete restriction of physical activities and the permanent impairment of speech resulting from the accident, as well as the serious *461 injury and substantial and prolonged pain suffered by the plaintiff following the accident, we do not find the trial court's award to be either manifestly excessive or manifestly insufficient. See, e.g., as to serious and permanently restricting injuries: Turner v. State, La.App. 2 Cir., 137 So.2d 456; Fullilove v. United States Casualty Co., La. App. 2 Cir., 129 So.2d 816; Hidalgo v. Dupuy, La.App. 1 Cir., 122 So.2d 639. See, e.g., as to impairment of speech: Chase v. Burley, La.App. 2 Cir., 76 So.2d 587; Grayson v. Irvmar Realty Co., 12 Misc.2d 38, 173 N.Y.S.2d 71, noted 22 NACCA L.J. 153 (1958); Marino v. United States, C.A. 2, 234 F.2d 317.
For the above reasons, the judgment of the District Court is affirmed.
Affirmed.
HOOD, J., dissents.

On Application for Rehearing
En Banc. Rehearing denied.
HOOD and CULPEPPER, JJ., are of the opinion that a rehearing should be granted.