414 So.2d 1369 (1982)
Oscar McCOY, et ux., Plaintiff-Appellant,
v.
FRANKLIN PARISH POLICE JURY, et al., Defendant-Appellee. and
Duane Ray SIKES, et ux., Plaintiff-Appellant,
v.
FRANKLIN PARISH POLICE JURY, Defendant-Appellee.
Nos. 14886, 14887.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1982.
*1371 McKeithen, Wear & Burns by Russell A. Woodard and Cynthia T. Woodard, Columbia, for plaintiffs-appellants.
Lowen B. Loftin, Dist. Atty. and Glynn D. Roberts, Asst. Dist. Atty., Rayville, for defendants-appellees.
Before JASPER E. JONES, FRED W. JONES and NORRIS, JJ.
NORRIS, Judge.
Plaintiffs appeal an adverse judgment in favor of the Franklin Parish Police Jury rejecting their claims for damages arising out of a one vehicle accident in these consolidated cases assigning in essence three issues for our consideration:
(1) The finding of the trial court that the driver of the automobile involved in the accident, Margie McCoy Sikes, was contributorily negligent;
(2) The finding of the trial court that the guest passenger, Lula B. McCoy, was contributorily negligent;
(3) The failure of the trial court to impose the doctrine of strict liability under Louisiana Civil Code Art. 2317.
The trial court in its "Reasons for Judgment" concluded "This collision occurred in the court's opinion because of the negligence of Mrs. Sikes." However, the court then proceeded to find both Mrs. Sikes and Mrs. McCoy contributorily negligent. Because of the court's findings, in addition to issues one and two listed above, we must consider for purposes of this appeal whether or not the Franklin Parish Police Jury was negligent; and if so, was its negligence a cause in fact of plaintiffs' injuries. Likewise, because the trial court did not address the question of strict liability,[1] we must determine its applicability to the instant situation.

FACTS OF THE ACCIDENT
Margie McCoy Sikes (plaintiff together with her husband in suit No. 14,887) was the new delivery person for the Sunday edition of the Monroe Morning World newspaper for a rural portion of Franklin Parish, Louisiana. On November 12, 1978, she and her mother, Lula B. McCoy (plaintiff together with her husband in suit No. 14,886), picked up her newspapers in Columbia (Caldwell Parish) where they resided at approximately 3:00 a.m. and traveled to Franklin Parish commencing delivery on her newly acquired route. Visibility was poor on this dark, foggy morning. Although Mrs. Sikes had accompanied the former delivery person on the route on two previous occasions when she had assisted by rolling newspapers, placing rubber bands around them and handing them to her predecessor, this was her initial attempt to drive the route herself. Mrs. Sikes drove her 1975 Vega, distributing the newspapers to the various houses on the route aided by her mother's rolling the newspapers, placing rubber bands around them and handing them to her. Additionally, Mrs. McCoy operated a tape that had been recorded by the previous carrier that described houses where papers were to be delivered, proper placement of the papers and other general directions concerning the paper route.
At approximately 3:30 a.m., the women were driving south on an asphalt road known as the Ross Road, which is owned and maintained by the Franklin Parish Police Jury. Mrs. Sikes had delivered a paper, was traveling at a speed estimated between 15-25 mph, and was anticipating making a right turn as per the instructions on the tape. Approximately ¼ of a mile south of the delivery, Ross Road abruptly terminates at a point where it forms a "T" intersection with another parish owned and maintained road running in an east/west direction. This road was referred to as the Ray Bryan Road and/or the White Oak Landing Road. South of the "T" intersection existed a 3-4 foot deep ditch, beyond which was an open field or pasture. At all material times, there existed no stop sign, warning sign or barricade to warn motorists traveling south on Ross Road of its termination at the "T" intersection. Although Mrs. Sikes was looking for the right turn, she saw no signs or warnings and was in the intersection before she realized it. She applied her *1372 brakes, skidded across the intersection into the ditch, wrecked her car and injured herself as well as her mother.
It is undisputed that the Ross Road and the intersection in question were under the jurisdiction of the Franklin Parish Police Jury.

NEGLIGENCE THEORY
La.R.S. 32:235 makes the police jury or parish authority responsible for placing and maintaining traffic control devices upon highways under its jurisdiction. Fontenot, et al. v. State, through the Dept. of Highways, et al., 346 So.2d 849 (La.App. 1st Cir. 1977).
Likewise, the responsible governing authority which has jurisdiction over the highway, road, street or thoroughfare has the legal duty to erect warning signs or barricades sufficient to warn motorists of any unusual obstructions, perilous condition or defect in the road face that would entail danger to the physical safety of those proceeding over such routes. Callahan v. Town of Bunkie, 287 So.2d 629 (La.App. 3rd Cir. 1973); Watts v. City of Baton Rouge, 248 So.2d 42 (La.App. 1st Cir. 1971), writ refused 259 La. 63, 249 So.2d 203 (1971). Failure of the governing authority to erect or properly maintain appropriate warning signs or barricades at a "T" intersection where the road terminates in a deep ditch has been held by our court to be a violation or breach of the duty to protect the traveling public from an unusually dangerous hazard. See Watts v. City of Baton Rouge, supra; McCallum v. State, Dept. of Highways, 246 So.2d 46 (La.App. 3rd Cir. 1971); LeJeune v. State, Dept. of Highways, 215 So.2d 150 (La.App. 3rd Cir. 1968), writ refused 217 So.2d 413 (La.1969). However, in order for this violation of duty to constitute negligence, it must be shown that the public agency had knowledge, actual or constructive, of the danger and that it failed to correct the danger or warn motorists of the danger. Wall v. American Employers Ins. Co., 377 So.2d 369 (La.App. 2d Cir. 1979) affirmed at 386 So.2d 79 (La.1980); Harrison v. State of La., Dept. of Highways, 375 So.2d 169 (La.App. 2d Cir. 1979).
In the instant situation, we conclude that the unmarked "T" intersection constituted an unreasonable risk of harm or a dangerous hazard to the public and should have been appropriately signed or marked by the Franklin Parish Police Jury. In addressing the question of whether or not the police jury had actual or constructive knowledge of this defect or dangerous hazard, we note the trial court's correct statement that the testimony regarding whether or not the intersection in question had ever been signed was conflicting.[2] The lower court made no express finding regarding this issue; however, we conclude that there had been stop signs placed at this particular intersection controlling traffic traveling south on Ross Road prior to the accident although we can not determine from the evidence exactly when a sign was last in place.
The evidence does clearly show that the police jury was aware that this intersection existed. R. H. Allen, maintenance superintendent for the Franklin Parish Police Jury, was familiar with the intersection. He testified that the stop sign at the intersection controlling south bound traffic on Ross Road had been knocked down some four or five times in the past four years. While he had no knowledge of the existence or condition of the sign at the time of the accident, he felt there had been one in place around two weeks prior to the accident from his personal observations. Although not sure about the time frame, he testified it could not have been longer than three weeks before *1373 the accident when he observed the sign.
Allen further testified that the police jury had no regular inspection system for determining whether traffic control devices in its jurisdiction were in need of repair or replacement. Furthermore, he did not know whether or not the police jury had received any notice that the stop sign was down. Therefore, from the testimony we can only conclude that the stop sign in question could have been down for as long as two weeks.
Considering the hazardous nature of the "T" intersection, with its prior history of downed or missing signs, coupled with the police jury's lack of a reliable inspection system for ascertaining whether traffic control devices within its jurisdiction were in need of repair or replacement, we conclude that the police jury is charged with constructive notice of the missing stop sign. See Willis v. Everett, 359 So.2d 1080 (La. App. 3rd Cir. 1978), writ refused 362 So.2d 800 (La.1978); Jones v. La. Dept. of Highways, 338 So.2d 338 (La.App. 3rd Cir. 1976).
However, even if the police jury had not been charged with this constructive notice of the downed sign, we would still conclude that they were in violation of their duty to adequately warn the motoring public because the placement of a stop sign alone at this intersection in our opinion was an inadequate marking or warning. See Wood v. State, Dept. of Highways, 295 So.2d 78 (La.App. 2d Cir. 1974), writ refused 295 So.2d 446 (La.1974); Lopitz v. Louisiana Dept. of Highways, 268 So.2d 269 (La.App. 4th Cir. 1972); McCallum v. State, Dept. of Highways, supra; LeJeune v. State, Dept. of Highways, supra. Ray Bryan, who had lived in close proximity to the intersection since 1953, testified there had been "quite a few accidents" at the intersection where motorists had run through the intersection into the ditch.[3] Therefore, this hazardous location should have at least been properly identified with a "T Intersection Ahead" reflector sign, and perhaps even with some type of reflecting barricade or blinking red light.
We further conclude that the negligence of the police jury was the cause in fact of the harm sustained by plaintiffs. Mrs. Sikes testified she was looking for a stop sign or some indication where the road she was to turn right on was located. Her testimony was that had she had some indication that the road was ending or had she seen a stop sign she could have avoided the accident despite the dark, foggy conditions. The slow speed of the Sikes' vehicle and the fact that Mrs. Sikes was looking for this very intersection bolsters our conclusion that even a stop sign (under these conditions) would have caught her attention to alert her to the intersection. It must also be presumed that had she seen the sign, she would have obeyed it. Willis v. Everett, supra. It is clear from the record that the conduct of the police jury, i.e. its failure to adequately mark and maintain the intersection, was a cause in fact of the accident in that its conduct was a substantial factor in bringing about the harm suffered by plaintiffs. The breach of this duty of reasonable and ordinary care to the motoring public resulted in the injuries sustained by plaintiffs. See Hill v. Lundin & Assoc., Inc., 260 La. 542, 256 So.2d 620 (1972); Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Robertson, "Dialogues on Hill v. Lundin," 34 La.L.Rev. 1 (1973).
Therefore, plaintiffs are entitled to recover for their injuries caused by defendant's negligence unless their claims are barred under some applicable legal principle. The trial court found that both plaintiffs were contributorily negligent because there was a "failure of both Mrs. McCoy and Mrs. Sikes to keep a proper lookout." We disagree.

CONTRIBUTORY NEGLIGENCE OF DRIVER, MARGIE SIKES
As noted prior, this was Mrs. Sikes' first attempt to operate a vehicle on the road in *1374 question. Admittedly, she had been a passenger on two previous occasions, but we further recognize that she was engaged in activities other than simply watching the road on those occasions. She was obviously not thoroughly familiar with the paper route; otherwise, there would have been no need for the taped instructions. While testifying that she knew she had to make a right turn because of the directions on the tape, she also stated that she did not know exactly where to turn. She further acknowledged that she knew the road was going to end but that she did not know exactly where. She was proceeding south on Ross Road with her eyes on the road ahead at a speed of 15-25 mph on a dark, foggy night looking for some sign or indication of where to turn right.
In Dupas v. City of New Orleans, 354 So.2d 1311, 1313 (La.1978), the court said:
As we summarized in Smolinski v. Taulli, 276 So.2d 286, 290 (La.1973) (citations omitted):
"Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection. The standard of conduct to which the plaintiff must conform for his own protection is that of a reasonable man under like circumstances. The party relying upon contributory negligence has the burden of proving it.
"Failure to take every precaution against every foreseeable risk or to use extraordinary skill, caution, and foresight does not constitute negligence or contributory negligence.... [The victim] is required only to use reasonable precautions, and [his] conduct in this regard is not negligent if, by a common-sense test, it is in accord with that of reasonably prudent persons faced with similar conditions and circumstances."
See also Curry v. Iberville Parish Sheriff's Office, 405 So.2d 1387 (La.App. 1st Cir. 1981), writ denied 410 So.2d 1130, 410 So.2d 1135 (La.1982).
In LeJeune v. State, Dept. of Highways, supra, the court stated:
Motorists are not required to anticipate that a roadway on which they are traveling will suddenly end in an unmarked ditch or body of water, (citation omitted) 215 So.2d at 153.
In Watts v. City of Baton Rouge, supra, plaintiff Watts was proceeding easterly on Byron Street at a speed estimated between 25-30 mph on a misty, foggy night. Watts had never previously traveled on Byron Street but he knew it terminated at a dead end when it reached McClelland Drive (a street which he had traveled on an average of once weekly for the previous 4½ to 5 years), although he did not know exactly where the termination point was. About sixty feet from the intersection, he realized its existence, applied his brakes, was unable to stop and ran into a five to six foot ditch on the east side of McClelland Drive. There were admittedly no signs, markers, lights, controls or barricades on Byron Street warning the motoring public of the impending interruption of the street on which plaintiff and his family were proceeding. The parish was found to be negligent in failing to provide adequate warning devices at this "T" intersection. The defense's contention that Watts was contributorily negligent was rejected by the court:
Where a litigant relies on contributory negligence of another party in defeating recovery, the burden of proving the facts necessary to apply this special defense rests with him who urges same. See Deshotels v. Southern Farm Bureau Cas. Ins. Co., 245 La. 23, 156 So.2d 465 (1963). As stated in LeJeune, motorists are not required to anticipate that a roadway on which they are traveling will suddenly end in an unmarked ditch or body of water.
The evidence here does not reflect acts of commission or omission in Watts' operation of his Ford automobile at the time the accident occurred. He was not driving at an excessive rate of speed considering the flow of traffic, the fog and mistiness with which he was confronted or the damp surface of Byron. As a matter of fact the evidence shows that he was maintaining a proper look-out and was travelling cautiously. This evidence has not been refuted.
*1375 In Callahan v. Town of Bunkie, supra, the decedent left the family home to purchase hamburgers for supper. On returning home, she evidently turned down the wrong street by mistake and drove in the direction of her home. She failed to observe a dead-end sign one block prior to where the street terminated in a ditch some three to six feet deep. She drove into the ditch and subsequently died as a result of her injuries. The court found the city of Bunkie to be negligent in its failure to erect a suitable warning to alert the public to the danger impending at the termination of the street. Likewise, the court rejected the city's contention that the driver was contributorily negligent for the same reasons as stated in LeJeune, supra. See also Falgout v. Falgout, 251 So.2d 424 (La.App. 1st Cir. 1971); Pierrotti v. Louisiana Dept. of Highways, 146 So.2d 455 (La.App. 3rd Cir. 1962).
In Granger v. Travelers Ins. Co., 167 So.2d 211 (La.App. 3rd Cir. 1964, writ refused 246 La. 883, 168 So.2d 268 (1964), the plaintiff was injured as a result of a defect in a highway under construction. The defect was a hump or ramp over a culvert laid across the highway which was 2½ to 3 feet higher than the surface of the road. Plaintiff driver had passed over the hump several hours earlier that same day and twice the day before, but all of these trips had been in the daylight hours. The accident in question occurred at night, and plaintiff was traveling 25-35 mph. The insurer of the road contractor was found to be negligent in not providing adequate warning to oncoming motorists. However, plaintiff was found not to have been contributorily negligent:
As to the defendant's contention of contributory negligence, a night motorist is not held to a duty to anticipate that there will be left unmarked and unwarned such a defect on the highway. See Pierrotti and other cases cited above. As stated in rejecting a similar defense in a highway defect accident, "Our courts have repeatedly held a motorist has no legal duty to anticipate an unusual hazard where there is no adequate warning, but has the right to presume the highway is safe for usual and ordinary traffic, even at night." Smith v. State, above cited, at 87 So.2d 383.
The rule that a motorist should drive at no greater rate of speed than that within which he can stop within the range of his vision is subject to numerous exceptions. Eubanks v. Wilson, La.App. 3 Cir., 162 So.2d 842. As stated, a night motorist is also ordinarily entitled to assume that the roadway ahead is safe for travel, and he is not charged with the duty of guarding against negligent obstruction to travel, which he had no reason to anticipate. Suire v. Winters, 233 La. 585, 97 So.2d 404; Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127; Vowell v. Manufacturers Casualty Ins. Co., 229 La. 798, 86 So.2d 909; Dodge v. Bituminous Casualty Co., 214 La. 1031, 39 So.2d 720; Fontenot v. Lafleur, La.App. 3 Cir., 124 So.2d 607, certiorari denied, and cases cited therein.
Insofar as able counsel for the defendant contends that the plaintiff driver should have anticipated the hazard because she had passed over the hump several hours earlier going to town (and twice the day before), it is sufficient to note that these prior trips had been during daylight hours. The motorist was not required to anticipate that at night the hazard would be left unwarned by flares or otherwise, nor was she required to have so memorized the location of each of the three highway defects on her previous passage so as to be held accountable for failing to anticipate on her return trip the exact location of the hump situated in the night ahead, and that such defect would be left without adequate warning to night motorists of the hazard created by it. Carlisle v. Parish of East Baton Rouge, above cited, [La.App.] at 114 So.2d [62] 66, Cf. also, Dufore v. Daugereaux, La.App. 1 Cir., 122 So.2d 666, 672 (syllabus 8). 167 So.2d 213, 214.
In the instant case, Mrs. Sikes was unfamiliar with the road as a driver; she knew she had to make a turn but not exactly where. She was driving at a slow rate of speed at night closely observing the road ahead. We find that she had no duty to anticipate that the "T" intersection that *1376 terminated in a ditch would be unmarked and devoid of any warning whatsoever. As a night time motorist, she was entitled to assume that the roadway ahead was safe for travel and was not charged with the duty of guarding against the unmarked, defective intersection. Her conduct was in accord with that of a reasonably prudent person faced with similar conditions and circumstances. The trial court was clearly wrong in holding otherwise.

CONTRIBUTORY NEGLIGENCE OF LULA MCCOY, GUEST PASSENGER
Additionally the trial court found the passenger in the Sikes vehicle to be contributorily negligent. We find that the lower court erred in its application of the law to the guest passenger and thus arrived at a clearly wrong result in this regard.
White v. State Farm Mut. Auto. Ins. Co., 222 La. 994, 64 So.2d 245 (1953), sets forth the often quoted rule regarding contributory negligence of a guest passenger:
Contributory negligence is, as the phrase signifies, negligence which contributes to the accident, that is, negligence having causal connection with it and but for which the accident would not have occurred.4 Insofar as the rights of a guest in an automobile are concerned, it is settled that, in actions against third persons, the negligence of the host driver does not bar recovery because his negligence cannot be imputed to the guest. Lawrason v. Richard, 172 La. 696, 135 So. 29; Lorance v. Smith, 173 La. 883, 138 So. 871. (Footnote omitted.) However, a guest may be denied recovery on the ground of contributory negligence in instances where he is guilty on his own part of independent negligence of such a nature, that, but for which, his injuries would not have been sustained. Lorance v. Smith, supra; Churchill v. Texas & Pac. Ry. Co., 151 La. 726, 92 So. 314; Delaune v. Breaux, 174 La. 43, 139 So. 753; Squyres v. Baldwin, 191 La. 249, 185 So. 14. But in determining whether the asserted fault of a guest has been a contributing factor in bringing about his injuries, it is first necessary to ascertain what duties are imposed upon him as pertain to the operation of the vehicle and the safety of the journey. It is firmly established by the above cited authorities of this Court and others of the Courts of Appeal of this State, too numerous to mention, that a guest is under no duty to supervise the driving of the vehicle and he is not obliged to look out for sudden or unexpected dangers that may arise. Albeit, he has the right to place reliance upon the driver to discharge that obligation and, as aptly expressed by the Court of Appeal, Second Circuit, in Singley v. Thomas, 49 So.2d 465, 469, is not required to monitor the operation or to pay attention to the road and other traffic conditions" in the absence of a showing that he has actual or constructive knowledge that the driver is incompetent or unfit to operate the vehicle.
On the other hand, the jurisprudence has imposed upon the guest an obligation to avoid an accident or injury to himself under certain conditions. That duty has been tersely said by this Court, in Delaune v. Breaux, supra, to exist in cases where the guest "* * * is aware of the fact that there is danger ahead, which apparently is unknown to the driver or may be unknown to him, or where a sudden or unexpected danger arises to the knowledge of the guest, apparently not observed by the driver * * *." 174 La. at page 47, 139 So. at page 755. In such situations, it is incumbent on the guest to warn the driver of the danger and, if he fails to do so at a time when the driver is able to avert it, his dereliction may be said to be a contributing cause of any injury he may sustain. 64 So.2d 249, 250.
We have held in Wood v. State, Dept. of Highways, supra, that a guest passenger who had no control over the route taken and no control over the operation of the vehicle was not contributorily negligent and that even if the driver were negligent (which is not the case here), his negligence is not imputed to a guest passenger.
*1377 Applying the foregoing well established rules of law to the instant case, we find that Mrs. McCoy was not contributorily negligent. She was riding in the Sikes vehicle assisting with tasks connected with the paper route and working the tape recorder. The recorder did not tell her exactly where to turn or that the road ended. She had never been on this road before and observed no warning sign. She had no control over the route taken and no control over the operation of the vehicle. She certainly had no duty to look out for sudden and unexpected dangers such as the unmarked intersection. Because there is no evidence that the driver was incompetent or unfit to operate the vehicle, she was under no obligation to monitor the operation of the vehicle. The evidence clearly does not establish that Mrs. McCoy was contributorily negligent.
While we are cognizant of the principle that factual findings of the trial judge will not be disturbed in the absence of evidence of manifest error, we are not required by the manifest error principle to affirm a trier of fact's refusal to accept as credible, uncontradicted testimony or greatly preponderant objectively corroborated testimony where the record indicates that there was no sound reason for the rejection and where the finding was reached by overlooking applicable legal principles. See Arceneaux v. Domingue, 365 So.2d 1330 (La. 1979); and West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979).
Accordingly, for the foregoing reasons, we hold that the negligence of the Franklin Parish Police Jury was the legal cause in fact of the accident made the subject of these suits and plaintiffs, Margie Sikes and Lula B. McCoy, were neither negligent nor contributorily negligent.

STRICT LIABILITY
On appeal, plaintiffs argue that the police jury should be held strictly liable for the defective "T" intersection under La.Civil Code Art. 2317. Applying our rationale in Garrison v. State, through Dept. of Highways, 401 So.2d 528 (La.App. 2d Cir. 1981), to the instant case, we find that the "T" intersection was in the care and custody of the defendant police jury. The intersection was defective because it was not properly and adequately marked. This unmarked intersection caused an unreasonable risk of injury to the motoring public traveling south on Ross Road who entered the "T" intersection in the sense that it constituted a hazardous trap. The injuries sustained by plaintiffs were caused by the defective thing in the care and custody of the defendant. Under this theory, it is unnecessary to determine whether or not the police jury had actual or constructive notice of the downed sign. For the reasons given earlier in this opinion, the police jury failed to prove that the accident was caused by the fault of the victims, by the fault of a third person, or by an irresistible force. Therefore, the Franklin Parish Police Jury is additionally strictly liable for the accident and resulting injuries.

DAMAGES
Having concluded that plaintiffs are entitled to recover from defendant, we consider the issue of damages. Pursuant to La.Code of Civil Procedure Art. 2164, Courts of Appeal are empowered to award damages in cases where the trial court initially rejects the plaintiffs' demands and the record is complete with regard to damages. Sheppard v. Travelers Ins. Co., 333 So.2d 342 (La.App. 3rd Cir. 1976).
Mrs. Sikes testified that when the vehicle went into the ditch her head struck the windshield, her chest struck the steering wheel and bundles of papers struck her back. After the accident, her head, shoulders, and chest were hurting. She further testified she had headaches, hurting in her shoulders and neck for several months thereafter and at the time of trial, she still had occasional problems with her shoulders and her neck. However, the only medical treatment that Mrs. Sikes sought was from Dr. Baer I. Rambach, whom she saw on two occasions only (April 26, 1979 and September 14, 1979). Dr. Rambach diagnosed Mrs. Sikes' injuries as muscle and ligamentous strains to the upper dorsal region of the spine, prescribed a pain reliever for her *1378 headaches, and was of the opinion that she would suffer no permanent residual disability. No hospitalization was required. She complained of difficulty with her housework after the accident but continued to operate the paper route. At time of trial, she had been working at LaSavilla Fashions since May, 1980.
Accordingly, we find that $4000 will adequately compensate Mrs. Sikes for her pain and suffering.
Special damages are awarded to plaintiff Duane Sikes as follows:[4]

Orthopedic Associates (Dr.
 Rambach) $ 135.00
Gartman Motor Co. (damage to
 1975 Vega) 1694.33
 ________
TOTAL $1829.33

Mrs. McCoy also struck the windshield of the car upon impact and received contusions to the forehead. The evidence indicates she was dazed after the accident and taken home by her son and husband. The next day Mrs. Sikes took her to see Dr. H. H. Winters in Columbia, Louisiana. Her complaints to Dr. Winters consisted of a bruised hand, as well as pain in the neck and lower back. Mrs. McCoy testified that she had severe headaches or fainting spells on occasion. She further testified that her ability to do household chores was impaired and that she was still having problems with her arm and back. However, Mrs. McCoy only saw Dr. Winters on two subsequent occasions (November 24, 1978) with complaints related to her neck and back and (February 20, 1979) with complaints related to pain in her lower back. She also consulted Dr. Rambach who examined her on November 26, 1979 and arrived at the conclusion that she had sustained a muscle and ligamentous strain of her cervical, dorsal, and lumbar spine which possibly aggravated a pre-existing degenerative arthritic condition. He prescribed only mild analgesics such as aspirin or bufferin.
Accordingly, we find that $6000 will adequately compensate Mrs. McCoy for her pain and suffering.
Special damages are awarded to plaintiff Oscar McCoy as follows:[5]

Dr. H. H. Winters $ 25.00
Orthopedic Associates (Dr.
 Rambach) 210.00
 _______
TOTAL $235.00

For the foregoing reasons, the judgment of the lower court is reversed in its entirety in both of these suits. Accordingly, judgment is rendered in suit No. 14,886 against defendant, Franklin Parish Police Jury, and in favor of plaintiff, Mrs. Lula Evans McCoy in the amount of $6000; and in favor of plaintiff, Oscar McCoy, in the amount of $235.00. These awards are to bear legal interest from date of judicial demand until paid. Defendant, Franklin Parish Police Jury, is cast for all costs in the lower court in the amount of $474.48 and for costs of this appeal in the amount of $25.00.
Judgment is rendered in suit No. 14,887 against defendant, Franklin Parish Police Jury, and in favor of plaintiff, Margie McCoy Sikes in the amount of $4000; and in favor of plaintiff, Duane Ray Sikes, in the amount of $1829.53. These awards are to bear legal interest from date of judicial demand until paid. Defendant, Franklin Parish Police Jury, is cast for all costs in the lower court in the amount of $136.00 and for costs of this appeal in the amount of $25.00.
JUDGMENT REVERSED and RENDERED.
NOTES
[1] It appears that this contention was not argued by plaintiffs to the trial court.
[2] Witness Ray Bryan, a retired school teacher and principal, testified that he had lived on Ross Road since 1953 and could not recall a stop sign ever being at the intersection in question. His son, Ray Bryan, Jr., testified "although he could not swear there was one" it was his opinion that the stop sign had been present prior to the accident. R. H. Allen, maintenance supervisor for the police jury, testified there had been stop signs at the intersection controlling traffic heading south on Ross Road prior to the accident but that they frequently got knocked down. He had put up stop signs 4 or 5 times within the past four years.
[3] Duane Sikes further testified that when he approached the intersection looking for his wife's vehicle, he had difficulty negotiating the intersection but saw the reflection of the wrecked car's tail lights and stopped his vehicle in time to avoid the ditch.
[4] Plaintiff produced no evidence concerning loss of earnings, past or future, loss of earning capacity or future medical expenses.
[5] We note exhibits P-32 and P-33 which purport to be a report and bill from Dr. Larry E. Blackmon, Jr., optometrist, concerning a visit Mrs. McCoy made to him on November 1, 1979, complaining of broken glasses. Plaintiff offered no testimony to connect this evidence with the accident in question. Likewise, there was no evidence produced concerning future medical expenses, loss of earnings, loss of future earning capacity, etc.