597 So.2d 503 (1992)
Audrey D. FAUCHEAUX, Individually and as Administratrix of the Succession of Clay J. Faucheaux, and for and in Behalf of her Children, Clay A., Eric J. and Neal J. Faucheaux
v.
TERREBONNE CONSOLIDATED GOVERNMENT, et al.
No. CA 910004.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
Writ Granted May 15, 1992.
*504 Johnny X. Allemand, Thibodaux, Eldon E. Fallon, New Orleans, for plaintiffs and appellants, Audrey Faucheaux et al.
Robert A. Chaisson, Destrehan, for plaintiff in Reconvention and appellant, Bernard Faucheaux.
C. Berwick Duval, II, Houma, for defendants and appellees, Terrebonne Parish Consol. Government et al.
Before SHORTESS, CRAIN and GONZALES, JJ.
CRAIN, Judge.
This appeal is from a judgment dismissing the suit for damages of Audrey D. Faucheaux, the widow of Clay J. Faucheaux, and his children Clay A. Faucheaux, Eric J. Faucheaux and Neal M. Faucheaux. Bernard Faucheaux, the nephew of Clay J. Faucheaux, also appeals the dismissal of his reconventional demand.

PROCEEDINGS IN THE LOWER COURT
Clay J. Faucheaux died on September 14, 1985, as the result of an accident which occurred on that date. Audrey Faucheaux, as administratrix of the Faucheaux estate and individually, sued the Terrebonne Parish Consolidated Government and Terrebonne Parish Water District No. 1 (hereafter T.P.) for the damages suffered by Clay J. Faucheaux and also for his wrongful death. His major children joined the suit to assert any interest they might have for the death of Clay J. Faucheaux. Terrebonne Parish Consolidated answered the plaintiffs' suit and filed a third party demand against Bernard Faucheaux, the nephew of Clay J. Faucheaux and a passenger in his boat at the time of the accident. Bernard Faucheaux reconvened against T.P. for his own alleged damages and filed a motion for summary judgment asking for dismissal of T.P.'s third party demand against him. The motion for summary judgment was granted. An appeal was taken and the trial court judgment was affirmed in an unpublished opinion of this court bearing docket number CA/88/1522. Trial was then held on the original demand of the plaintiffs and the reconventional demand of Bernard Faucheaux. All suits were dismissed, resulting in this appeal.

*505 FACTS
On September 14, 1985, at about 5:10 a.m. Clay J. Faucheaux picked up his nephew, Bernard Faucheaux at Nicholls State University in Thibodeaux where he was a student, to go on a fresh water fishing trip. They drove to Cannon's Landing, where at about 5:45 a.m. just as daylight was breaking, they launched Clay J. Faucheaux's 16½ foot bass boat. Clay Faucheaux was at the controls which were located at the approximate center of the boat. Bernard was seated in the rear. They left the launch, turned right and proceeded on Black Bayou for 400 or 500 hundred yards to the highway 90 bridge where they turned left under the bridge into Minor's Canal. They were travelling at idle speed estimated to be about 5 knots. Located 400 feet down Minor's Canal from the bridge there is a levee structure which closes off the entire canal except for an opening measuring approximately 8 × 8. This opening can be closed by what is termed a Tainter gate. When closed this gate prevents salt water from intruding through Minor's Canal. The gate, which is a solid metal structure, is opened and closed by being raised and lowered by an electric motor. The gate has three positions; locked open which means the gate is up, locked closed which means the gate is down in the water and can be opened only by T.P. personnel, and "on the button" which means the gate is down but can be opened by pressing a button which is located on the bottom of the levee to the right when approaching from the Highway 90 bridge. The button can be pressed from a boat. When pressed the gate opens and remains open for 1½ minutes when it automatically closes again. It closes very slowly at 1.1 inches per second.
Bernard Faucheaux had never been through the gate prior to that morning with his uncle. He saw the structure when the boat turned into Minor's Canal at the bridge. He noted another boat going through. He then proceeded to arrange his fishing equipment and without looking further. He did not look back up until he heard his uncle exclaim, "That sucker's coming down!" He then looked up and saw the boat already in the passageway where the gate was located. At that time the gate was about 4 to 6 inches above the front of the boat, coming down. His uncle left his position, went to the front of the boat and tried to push it back from the gate by pushing against the side of the levee. Bernard followed suit. When that effort did not accomplish its purpose they decided to exit the boat. They did so by going to the back and getting out on the levee on the left side.
After they exited the boat the gate kept descending, pushing it under. Their equipment was floating on the water. His uncle asked for directions to the button from people in another boat. He then proceeded up the levee to a bridge which crossed the opening containing the gate. He crossed the bridge, walked down the levee on the other side and pressed the button. He then collapsed and died.
Clay J. Faucheaux had a history of heart trouble including a prior heart attack. The undisputed cause of death was ventricular fibrillation brought on by the excitement and stress of the incident with the gate.
The trial court found that the gate was operating properly, "on the button" at the time of the accident, and the accident was caused solely by the negligence of Clay J. Faucheaux in failing to observe that the gate was descending. Appellants do not question that the gate operated in the manner in which it was designed. They claim the trial court erred, however, in failing first to find that T.P. was negligent per se in not having warnings in compliance with Corps of Engineers and Coast Guard regulations. Absent applicable regulations, they further claim the trial court was in error in failing to find a duty to warn that the gate was automatically closing on the part of T.P. under general rules of negligence.

NEGLIGENCE PER SE
Appellants claim that T.P. is negligent per se in failing to obtain a necessary permit from the Corps of Engineers for construction and operation of the gate, and *506 further failure to comply with the Coast Guard regulations with reference to warnings on those structures required to be permitted by the Corps.
Fault which creates liability under La.C.C. art. 2315 may be established by proving willful acts, violations of statutes or breaches of the obligations of vicinage. Turner v. New Orleans Public Service, Inc., 476 So.2d 800 (La.1985). Under certain circumstances violation of a statute may be civil negligence. Where a statute or regulation is applicable it is necessary only to prove violation of the statute or regulation in order to prove negligence, and then to show that the violation was the cause in fact and the legal cause of the accident. Coleman v. Douglas Public Service, Inc., 423 So.2d 1205 (La.App. 4th Cir. 1982), writ denied, 429 So.2d 153 (La. 1983). Since negligence is never presumed the plaintiff has the burden of showing violation of the statute or regulation, that the statute protects against risks to the class of persons to which plaintiff belongs and that violation of the regulation caused the harm. Melerine v. Avondale Shipyards Inc., 659 F.2d 706 (5th Cir.1981). Once the plaintiff carries this burden, a presumption of negligence arises from the violation of a statute or regulation, and places on the violator of the statute or regulation the burden of exculpating himself from negligence. Tolbert v. Ryder, 345 So.2d 548 (La.App. 3rd Cir.1977).
Plaintiff presented the testimony of an expert, Captain George Blann, a marine surveyor and consultant, who retired from the Coast Guard as a Lt. Commander, and who inspected vessels and investigated accidents while in the Coast Guard. He testified the Tainter gate was built in 1964. Under Title 33, part 322.4 CFR, structures built before 1968 are exempt from requiring a Corps of Engineers' permit unless the structure interferes with navigation. If a Corps permit is required then the structure has to be marked according to Coast Guard regulations. Coast Guard regulations for this type of structure would require a blinking red light and 4 or 5 short blasts on a whistle to warn when the gate is closing. Blann's theory is this structure interferes with navigation because Minor's Canal is affected by tides and is connected with the Intra Coastal Canal through which there is access to the ocean. When the gate is closed it affects navigation. Thus, a Corps of Engineers' permit should be required and compliance with Coast Guard regulations as to warning.
On the other hand, defendants produced as their expert Leonard Quick who was formerly with the Corps of Engineers and is presently the owner of a forensic engineering firm. He testified that since the gate was constructed in 1964, it requires no permit. After 1968 a permit would have been required if navigation was impaired. Quick explained that a layman's understanding of navigability is different from the Corps of Engineers' definition. He testified that no permit was obtained and none was required because the Corps had never declared Minor's Canal navigable.
From the evidence presented the court can conclude only that no permit was obtained for the Tainter gate and thus far, none has been required. Consequently, we cannot determine that a Coast Guard regulation has been violated. The assignment of error is without merit.

LIABILITY UNDER GENERAL RULES OF NEGLIGENCE
The essential elements of a cause of action under Article 2315 are fault, causation, and damage. Eschete v. City of New Orleans, 258 La. 133, 245 So.2d 383 (1971). Fault, of course, includes negligence. LSA-C.C. Art. 2316.
Negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. It is the breach of a duty statutory or non-statutory, owed to another to protect that person from the particular harm that ensued. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972), Prosser, Law of Torts, Sec. 36, pp. 192-197, (4th ed. 1971); Malone, Ruminations on Cause-In-Fact, 9 Stanford L.Rev. 60, 73 (1956). *507 Callais v. Allstate Insurance Co., 334 So.2d 692, 700 (La.1975).
The question is whether, under the general standard of conduct required of a public entity under the circumstances present here, T.P. owned a duty to Clay J. Faucheaux to warn him that the gate was closing automatically.
The record is clear that T.P. owns and operates the Tainter gate which controls salt water intrusion. The record is not clear who has jurisdiction over Minor's Canal and the traffic which proceeds on it. However, since we conclude the trial court was correct in finding no liability on the part of T.P. we will assume that T.P. also exercised jurisdiction over Minor's Canal.
The traffic on a canal is similar to the traffic on a highway.
(T)he responsible governing authority which has jurisdiction over the highway, road, street or thoroughfare has the legal duty to erect warning signs or barricades sufficient to warn motorist of any unusual obstructions, perilous conditions or defect in the road face that would entail danger to the physical safety of those proceeding over such routes. Callahan v. Town of Bunkie, 287 So.2d 629 (La.App. 3d Cir.1973); Watts v. City of Baton Rouge, 248 So.2d 42 (La.App. 1st Cir.1971), writ refused, 259 La. 63, 249 So.2d 203 (1971). Failure of the governing authority to erect or properly maintain appropriate warning signs or barricades at a "T" intersection where the road terminates in a deep ditch has been held by our court to be a violation or breach of the duty to protect the travelling public from an unusually dangerous hazard ... However, in order for this violation of duty to constitute negligence, it must be shown that the public agency had knowledge, actual or constructive of the danger and that it failed to correct the danger or warn motorists of the danger. (Citations omitted) (Emphasis added)
McCoy v. Franklin Parish Police Jury, 414 So.2d 1369 (La.App.2d Cir.1982). Knowledge of the danger or unreasonable risk has always been necessary to determine the existence of a duty under La.C.C. art. 2315 by a public entity. It is also now required to impose strict liability under La. R.S. 9:2800.[1]
The jurisprudence reflects the type of evidence necessary to create the necessary knowledge of the danger or unreasonable risk to the public to show a duty to warn by the public entity under La.C.C. art. 2315. In McCoy, a sign had been present so the danger or unreasonable risk which forms the duty was assumed. It was then necessary only to show the sign missing and the police jury aware of it to show that the intersection again created an unreasonable risk. The court further held that even if the stop sign had not been missing, it was inadequate. Consequently, the intersection with the stop sign still constituted an unreasonable risk. The police jury should have been constructively aware of the risk because of "quite a few accidents at the intersection". McCoy, 414 So.2d at 1373. Hodges v. State, Through Dept. of Highways, 370 So.2d 1274 (La.App. 3d Cir.) writs denied, 374 So.2d 660, 661 (La.1979) also shows the knowledge necessary to create the duty. In Hodges, there was an intersection of a state highway and a parish road where the only control was a stop *508 sign on the left side of the parish road. It was alleged there was a duty to additionally warn by the state and police jury because the intersection constituted a danger or unreasonable risk to a reasonably prudent motorist. The knowledge necessary to create the duty was shown by 1) appearance before the road and bridges committee of the Calcasieu Parish Police Jury by a juror-elect calling attention to the dangerous condition and asking for installation of a traffic light; 2) a resolution by the jury calling on the state to rectify a dangerous condition; 3) a recommendation by a state engineer 9 years before the accident that there be a new stop sign; 4) a state study which had recommended a flashing beacon light; 5) a state highway department collision report which indicated that the intersection was one of the six most hazardous in a six parish area; 6) 19 accidents at the corner in less than 4 years.
In this case the evidence is to the contrary. There is a utility light located on top of the motor which drives the gate that is on when the gate is down. There is a sign at the button explaining its operations. There are the mechanics of the operation of the obviously visible gate which lowers very slowly giving traffic the opportunity to observe the closing. No evidence that would show knowledge on the part of T.P. that the gate was dangerous or created an unreasonable risk of injury requiring additional warning when operating on the button was presented. The gate was constructed in 1964. Evidence of two accidents since the gate was constructed was introduced. One of these occurred when the gate was down, the other when the gate malfunctioned. This is far short of the type of evidence necessary to show knowledge of a condition requiring a duty to additionally warn.[2]
We affirm the judgment of the trial court and dismiss plaintiffs' suit and the reconventional demand. All costs are assessed to the plaintiffs and Bernard Faucheaux.
AFFIRMED.
NOTES
[1] Appellant argues that knowledge is unnecessary to the existence of a duty under La.C.C. art. 2315. Although not stated, this argument apparently presupposes that the knowledge requirement under La.C.C. art. 2315 is applied to breach of duty rather than duty i.e. it is unnecessary to know a stop sign is needed, but if one is there it is necessary to know it is down. La.C.C art. 2317 imposes strict liability to custodians of things which are defective by creating an unreasonable risk of injury. La.R.S. 9:2800 requires a public entity have actual knowledge of the defective thing. If knowledge were not applied to create the duty of public entities under La.C.C. art. 2315, the incongruous result would be reached of a greater burden to show a duty under La.C.C. art. 2317 than under La.C.C. art. 2315.

Prior to the amendment of La.R.S. 9:2800 the only difference between liability of a public entity under La.C.C. art. 2315 and 2317 was the requirement of knowledge under 2315. Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir.1983). Now there appears to be no difference.
[2] We note that even though the point was not raised by either party and it is unnecessary to determine it because of the result we reach, there is a serious proximate cause question in this case. It is one thing to extend the duty of the public entity to persons physically injured by the breach of duty. It is another to require the public entity to protect a particular class of the public from stress that might aggravate a pre-existing condition.