JiPETERS, Judge.
The plaintiff, Everett Carroll, brought this action to recover damages sustained in a one-vehicle accident which occurred at the intersection of Evangeline Parish Roads 4-25 and 5-66 on April 9, 1992. Carroll named the Evangeline Parish Police Jury as defendant. After trial, the trial court found in favor of the defendant and dismissed the plaintiffs demands. Plaintiff appeals this judgment.
DISCUSSION
Parish Road 4-25 begins at the Bayou Cocodrie Bridge, which marks the boundary between Rapides and Evangeline Parishes. It then runs in a southerly direction approximately two to three miles and terminates as the stem of a T-intersection with Evangeline Parish Road 5-66. The extension of Parish Road 4-25 to the north into Rapides Parish carries a traveler to the town of Glenmora, ^Louisiana, hence the road’s other name, the Glenmora Highway. Those traveling Parish Road 5-66, which is also known as the Turkey Creek Road, have the right of way through the intersection. Both of the roads are substandard.
The maximum speed limit on parish roads-in Evangeline Parish is fixed by local ordinance at thirty-five miles per hour. However, from the Bayou Cocodrie Bridge to the intersection there are no traffic-control signs or devices to warn the motoring public of the speed limit, of the nature of the highway, or of the upcoming intersection. The only traffic control device at the intersection is a stop sign located on the southwest corner of Parish Road 4-25. However, Parish Road 4-25 is straight for at least one fourth of a mile before the intersection, giving a driver an unobstructed view to the south. Additionally, the land beyond the intersection is basically timberland which should be made visible by approaching headlights.
At the time of the accident, the plaintiff was employed in the offshore oil and gas industry. His work schedule was such that he would work seven days offshore and then would be home for seven days. Carroll had just recently moved from Lafayette Parish and was living with his mother and brother in Glenmora. While living in Lafayette Parish, he and a co-worker from Eunice, Louisiana, had carpooled to the Louisiana coast, where they would acquire transportation to their offshore rig. However, in the past, the co-worker had met Carroll at his residence in Lafayette Parish. Carroll’s move to Glenmo-ra caused a change in the carpool procedure.
At approximately 2:30 a.m. on April 9, 1992, the plaintiff left his mother’s home to go to work. However, instead of meeting his co-worker in the Lafayette area, Carroll was to meet him in Eunice. Eunice is located on the boundary of Acadia and St. Landry Parishes. Because of its location in relation to *426 Glenmora, Carroll decided to travel the Glen-mora Highway.
At the time Carroll left his mother’s home, the weather was moderately foggy. ^Although he had not traveled the Glenmora Highway in several years, the plaintiff was aware of the existence of the intersection and knew that once he crossed Bayou Cocodrie, it was close at hand. He testified that after he crossed the bridge, he began looking for the stop sign that would warn him of the intersection but never saw it. As he approached the intersection at approximately forty-five miles per hour, he realized its presence too late. When he realized he was already at the intersection, he applied his brakes and skidded through it, striking a pine tree on the opposite side. Later investigation revealed that the stop sign on Parish Road 4-25 was lying in the ditch on the southwest corner with a fire ant mound partially constructed on it. The plaintiff brought this action to recover damages resulting from the accident.
ANALYSIS
It is not disputed that Parish Roads 4-25 and 5-66 were under the jurisdiction of the Evangeline Parish Police Jury. Louisiana Civil Code article 2317 provides in part that “[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.” (Emphasis added). Additionally, Louisiana Revised Statutes 32:235(B) places the responsibility on the parish authorities to maintain traffic control devices upon highways within their jurisdictions. This responsibility is the basis of a legal duty to the public.
Because of this responsibility, the police jury has the legal duty to erect warning signs sufficient to warn motorists of hazardous conditions. McCoy v. Franklin Parish Police Jury, [414 So.2d 1369 (La. App.2d Cir.1982) ]. The failure to so warn subjects the parish to liability for damages resulting from the breach of that duty.
Longer v. Bienville Parish Police Jury, 541 So.2d 360, 362 (La.App.2d Cir.), writ denied, 546 So.2d 177 (La.1989).
However, this duty to warn motorists is conditioned upon the police jury’s pknowledge that the hazardous conditions exist. Louisiana Revised Statutes 9:2800 provides in relevant part:
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge. (Emphasis added).
The plaintiff contends the intersection of Parish Roads 4-25 and 5-66 was hazardous and the police jury failed in its duty to erect suitable warning signs or barricades. The trial court found that, without the stop sign in place, the intersection constituted an unreasonable risk of harm to the motoring public. However, the trial court also concluded the Evangeline Parish Police Jury had neither actual nor constructive knowledge that the sign had fallen or been knocked down.
We review factual findings by the trial court under the manifest error-elearly wrong standard. Stobart v. State through Dep’t. of Transp. and Dev., 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). Although there were a number of witnesses who testified for the plaintiff that at various times they witnessed the stop sign down in the past, only one, Tommy Ray Compton, indicated he notified the police jury. This evidence was rebutted by other testimony.
Compton testified he spoke to Earl Deville, the police jury supervisor of the district where the intersection is located. Deville testified he did not recall any conversation with Compton concerning the sign and that the intersection had presented no problems in the past. Marvin O’Dell Clark, a police *427 jury employee, testified that two days before the accident he had operated a motor grader at the intersection and specifically recalled seeing the stop sign in place. His testimony iswas substantiated by that of Lonnie King, another police jury employee, who met Clark at the intersection the day Clark performed the motor grader work. King also specifically recalled seeing the stop sign in place.
Dr. Dale Pollet, an entomologist at Louisiana State University, examined the pictures taken of the sign and the fire ant mound and testified that, in his expert opinion, it would only take twenty-one to forty-eight hours for ants to build such a mound. His conclusion was based on the evaluation of the size of the mound, the soil structure, and the fact that the mound had not crusted over.
The trial court concluded the sign had been down between twenty-one and forty-eight hours and therefore the police jury had neither actual nor constructive knowledge of the hazardous condition created by it not being in place. We find no manifest error in that conclusion.
The plaintiff argues that with or without the stop sign in place the intersection constitutes a hazard to the motoring public because it lacks other warning devices and barricades to inform the public of its existence. The trial court concluded that additional signs would have been “more desirable” but that the single stop sign was “adequate at this particular intersection given all the facts and circumstances.” Given the evidence in the record, we find no' manifest error in this conclusion.
CONCLUSION
For the reasons set forth herein, we affirm the trial court’s judgment in all respects. All costs are assessed against the plaintiff, Everett Carroll.
AFFIRMED.